

# **REDACTED**

SMITH DEVELOPMENT — Real Estate Development & Consulting

1043 Makawao Avenue, Suite 208, Makawao, HI 96768
Phone: (808) 572-3011   Fax: (808) 572-8378
www.SDHawaii.com   email: KRS@SDHawaii.com

---

TO:   Franklin K. Mukai, Esq.                         FAX NO.:   (808) 535-8003
      McCorriston Miller Mukai Mackinnon LLP
      Attorneys at Law

FROM:   Val Ching-Johnson                             DATE:   October 1, 2001

NO. OF PAGES INCLUDING THIS COVER SHEET: 4
If any part of this fax transmission is missing or not clearly received, call (808) 572-3011.

---

RE:   Pukalani Country Club

See attached letter dated October 1, 2001

013 1634R

**EXHIBIT 11**



**SMITH DEVELOPMENT** — Real Estate Development & Consulting

1043 Makawao Avenue, Suite 208, Makawao, HI 96768
Phone: (808) 572-3011   Fax: (808) 572-8378
www.SDHawaii.com   email: KRS@SDHawaii.com

October 1, 2001

Mr. Satoshi Kinoshita
Executive Vice President
Sports Shinko (Pukalani) Co., Ltd.
Pukalani STP Co., Ltd.
Pukalani Country Club
360 Pukalani Street
Pukalani, Maui, Hawaii 96768

    RE:    <u>Letter of Intent – Pukalani Country Club</u>

Dear Mr. Kinoshita:

    Thank you for your letter of intent dated September 21, 2001. KRS Development, Inc. ("KRS") is pleased to submit this responsive letter of intent as follows:

    1.    **Purchase of Assets and Stock.** KRS is prepared to purchase all of the assets of Sports Shinko (Pukalani) Co., Ltd. and Pukalani STP Co., Ltd. (collectively "Sports Shinko"), which includes the following assets (collectively the "Assets"):

        a.    Pukalani Country Club, consisting of various TMKs totaling approximately 175.85 acres, together with all improvements, facilities and equipment.

        b.    The wastewater treatment facility owned by Pukalani STP Co., Ltd., consisting of approximately 1.96 acres [TMK (2) 2-3-061:116 and (2) 2-3-057:123], together with all improvements, facilities and equipment.

        c.    A-1 zoned parcel consisting of approximately 22.927 acres [TMK (2) 2-3-09: Portion 39]

Mr. Satoshi Kinoshita
Page 2
October 1, 2001

    d.    H-1 zoned parcel consisting of approximately 7.53 acres [TMK (2) 2-3-09: Portion 39]

    e.    D-1 zoned parcel consisting of approximately 5.73 acres [TMK (2) 2-3-08:05]

2.    **Condition of Assets**. All Assets shall be purchased in an "as is, where is" condition.

3.    **Transfer of Stock or Assets of Pukalani STP Co., Ltd ("STP")**. KRS and Sports Shinko shall mutually agree as to the (a) the method by which KRS will acquire the STP assets, either through the purchase of such assets or the purchase of the stock of STP, (b) the allocation of the purchase price between the stock (or assets) of STP and the other assets purchased by KRS from Sports Shinko, and (c) any conditions that may be imposed upon the transfer of the STP assets or stock.

4.    **Purchase Price**. The purchase price shall be Eleven Million Five Hundred Thousand Dollars ($11,500,000.00 US) and shall be paid as follows:

    a.    An initial $250,000 deposit will be paid into escrow upon execution of a definitive agreement prepared by Sports Shinko's legal counsel. This initial deposit will become non-refundable if KRS moves beyond the due diligence period.

    b.    An additional $1,000,000 will be paid upon expiration of the due diligence period and will become non-refundable.

    c.    The balance of $10,250,000 will be paid upon closing.

5.    **Due Diligence**. KRS shall have a period of sixty (60) days following execution of the definitive agreement to conduct due diligence with respect to the Assets. Sports Shinko shall provide KRS all documents, reports, etc relevant to the Assets that are not already contained in the Property Information Package ("PIP").

6.    **Closing Date**. The closing date shall be within forty-five (45) days of the expiration of the due diligence period.

This letter of intent is not intended to be a binding agreement between KRS and Sports Shinko, nor is it intended to obligate either party to execute any other agreement. KRS would be willing to consider, however, the execution of a mutually acceptable binding letter of intent as a first step prior to signing a definitive agreement.

013  1636

Mr. Satoshi Kinoshita
Page 3
October 1, 2001

    If this letter of intent is agreeable, KRS would appreciate your response by October 8, 2001. If you have any questions regarding this letter, please do not hesitate to contact me.

Sincerely,

Kent R. Smith
President

cc: Franklin K. Mukai, Esq.
    Scott Mitchell
    Jack Naiditch, Esq.

013 1637



# SPORTS SHINKO (HAWAII) CO., LTD.

木下俊雄代表取締役社長様
福田国際事業本部長殿

平成 13 年 10 月 18 日

副社長
木下 聡

（合計 6 枚）

<u>資産売却経過報告書</u>
<u>プカラニカントリークラブ売却オファー</u>

　プカラニカントリークラブ隣町マカワオの開発業者スミス・デベロップメントより、先日ご指示いただきました内容で12日に送付致しました、オファーに対し返事が参りました。契約交渉において、金額は据え置くので、期間を早めにして合意に達するという目論見の裏をかかれ、金額だけ了承し、期間については先方の要求を一切変更しておりません。当社案と買い手案を下記に比較致します。

| 項目 | 当社案 | 買い手返答 |
|---|---|---|
| 1. 売却金額 | 売却金額は 1150 万ドル<br>クロージングは 12 月 14 日迄 | 価格は了承する。<br>クロージングは調査期間後 45 日でお願いしたい。 |
| 2. 支払い条件 | エスクロは 25 万ドル。<br>調査期間後、150 万ドルを追加する。<br>クロージングは 12 月 14 日迄とする。 | 金額は了承するが、期間は調査期間後 45 日とする。 |
| 3. 下水処理場 | 譲渡方法と価格の分配、また譲渡に必要な条件について、協議する。 | 全て了承する。下水処理会社アクア・エンジニアとの質疑応答を追加したい。 |
| 4. 調査期間 | 調査期間は売買契約書締結後 30 日で、期間延長はスポーツ振興の了承書面が必要。 | 調査期間は 60 日とし、期間開始は、売買契約締結後付表資料Aの受け取り時としたい。 |
| 5. クロージング | クロージングは調査期間後 15 日とし、12 月 14 日を期限とする。 | クロージングは調査期間後 45 日でお願いしたい。 |
| 6. 売買契約書 | 売買契約書は本条件を了承の後、7 日間で作成する。 | 売買契約書は、本条件締結後 14 日間で作成し、両者の十分な合意を得る。 |

買い手の要求する資料は、財務に関する資料、運営に関する資料、深井戸に関

c/o Ocean Resort Hotel Waikiki • 175 Paoakalani Avenue, Suite 300 • Honolulu, Hawaii 96815
Phone (808) 922-3861 ext. 7175 • Fax (808) 924-1982

104 3270

EXHIBIT B4
43 4-21-05
S. Kinoshita

する資料、下水処理場に関する資料です。資料の大半は、既に準備されており、現在西田支配人に問い合わせておりますが、問題無いと思います。

しかし、本条件で売却した場合、今月末に合意に達したとすると、売買契約書の作成が11月15日、調査期間終了が1月15日、クロージングが2月末になります。

買い手は、現状のまま（アズイズ）での売買に合意しているので先方は慎重に調査を行い、購入を決定する為に、期間を長く取っていると思います。期間に60日要する理由は、クラブハウスの構造、厨房設備、井戸、散水設備、コース管理棟とコース機器、下水処理場について、各専門家を雇い意見書を提出される為で、おそらく、その後45日かけて、正当な値引き、もしくは、売買の打ち切りを交渉してくると思います。

この点に付き、明日10時より向井先生と打ち合わせいたします。結果に付きましては、ラコスタへご報告申し上げます。

少しでも高く、迅速に売却する為に、ご意見等御座いましたなら、ご教授の程、宜しくお願い申し上げます。原本4枚を添付申し上げます。

104  3271

PAGE 02



1043 Makawao Avenue, Suite 208, Makawao, HI 96768
Phone: (808) 572-3011   Fax: (808) 572-8378
www.SDHawaii.com   email: KRS@SDHawaii.com

October 16, 2001

Mr. Satoshi Kinoshita
Executive Vice President
Sports Shinko (Pukalani) Co., Ltd.
Pukalani STP Co., Ltd.
Pukalani Country Club
360 Pukalani Street
Pukalani, Maui, Hawaii 96768

RE:   Letter of Intent – Pukalani Country Club Dated October 12, 2001

Dear Mr. Kinoshita:

Thank you for your letter dated October 12, 2001, which responded to our letter of intent October 1, 2001. KRS Development, Inc. ("KRS") is pleased to submit this response to your letter.

1. This paragraph is acceptable except for the reference to a closing of December 14, 2001. For a number of reasons, the closing can not occur earlier than 45 days after due diligence is concluded.

2. The increase in deposit is acceptable. Closing, however, shall occur 45 days after due diligence is concluded as described in paragraph 4 below.

3. This paragraph is acceptable. In addition, Sports Shinko will allow KRS to openly discuss its wastewater assets with its wastewater managers, Acqua Engineers or others managing the assets, and to review all information in Acqua's and any others files regarding this asset and its licensing.

4. The due diligence period will be sixty days and commence upon the execution of the Definitive Agreement and the receipt by KRS of the items noted in Schedule "A" attached to this letter.

104  3273

Mr. Satoshi Kinoshi
Page 2
October 16, 2001

5. The closing date shall be 45 days after conclusion of the due diligence period. Both parties acknowledge that time is of the essence.

6. This paragraph is acceptable, except that the period of time to conclude the Definitive Agreement should be changed to 14 days, which is a reasonable period of time for both parties and their counsel to adequately negotiate and review a document of this nature.

Once the letter of intent, with any amendment of modification thereto, is accepted, Sports Shinko will accept no other offer regarding the assets, and will not provide any due diligence to any third party.

KRS looks forward to working with you to close this transaction on the timetable noted above. To that end, we have instructed our staff and legal counsel to initiate as much due diligence as possible prior to the execution of a definitive agreement in order to close the transaction expeditiously.

If you have any questions regarding this letter, please do not hesitate to contact me.

Sincerely,

Kent R. Smith
President

Cc:  Valerie Ching-Johnson
     Jack Naiditch, Esq.
     Mark Walker

## SCHEDULE "A"

1. For both Sports Shinko and STP, the following information:

   a. Audited financial statements for 1998, 1999 and 2000
   b. 2001 operating budget
   c. 2001 year to date (YTD) financial statement

2. The following information for the golf/clubhouse operations:

   a. three years of monthly profit and loss statements
   b. the 2001 YTD rate of play
   c. three year summary of monthly membership totals, rate of play, and cart rentals by type.
   d. three year summary of historical membership initiation fee, monthly membership dues, cart and green fees
   e. copies of prior three years of County of Maui Real Property Tax Assessment notices
   f. copy of any and all concession agreements and amendments; copy of summary page from all insurance policies
   g. copies of all State of Hawaii and Maui County permits, including but not limited to Department of Health and , liquor control board licensing requests, approvals, permits, inspection reports, complaints, etc.
   h. current complete list of all current golf course equipment and repair schedules for all golf course equipment, including mowers and trucks.
   i. All warranties for all equipment and fixtures

3. The following information regarding the well and well operations:

   a. State of Hawaii approved well capacity report
   b. any and all State of Hawaii Water Commission approvals/rejections/notices regarding well operations and upgrades
   c. any and all well water quality tests
   d. well drilling and pump specifications
   e. well logs

4. The following information on the waste water treatment facility:

   a. all filings with the Public Utility Commission
   b. any letters, documents or correspondence from customers regarding the facility or its rates
   c. any documents/instruments which affect the ability to raise rates

5. Documentation regarding any current or pending claims, actions or judgments against Sport Shinko or STP

Yutaka Yamauchi

| | |
|---|---|
| 送信者： | "Douglas A. Pothul, CCIM, SIOR" <doug@pothul.com> |
| 宛先： | "Satoshi Kinoshita" <satoshi@sportsshinkohawaii.com> |
| CC： | "Tsugio Fukuda" <tfukuda@aol.com>; "Yutaka Yamauchi" |
| 送信日時： | 2001年8月18日 9:25 |
| 添付： | Offer for Pukalani, Smith Development, August 17, 2001.tif |
| 件名： | Pukalani Country Club |

Dr. Kinoshita (cc: T.Fukuda, Y.Yamauchi),

Attached (tif file) is a facsimile copy of an offer that we received on Pukalani Country Club from one of the primary buyer-prospects, Smith Development. Just in case you cannot open the attached file, the following are some basic terms of the offer:

Price: $11,000,000

Deposit: $100,000

Due Diligence: 90-days

Closing:

** 90-days after expiration of due diligence for the Golf Course and STP ($7.5 MM) (the "1st Closing", 18-months after the 1st Closing for the 5.73 acres ($500,000), 30 months after the 1st Closing for the 7.53-acre hotel zoned property ($1 MM), and 48 months after the 1st Closing for the 22.927-acres ($2 MM).

After your review, let's discuss a response.

Aloha,

Doug

Douglas A. Pothul, CCIM, SIOR
Colliers Monroe Friedlander, Inc.
808.523.9725

doug@pothul.com

doug@colliershawaii.com

http://pothul.com
www.colliershawaii.com

104 3276

01/08/20



**SMITH DEVELOPMENT** — Real Estate Development & Consulting

1043 Makawao Avenue, Suite 208, Makawao, HI 96768
Phone: (808) 572-3011   Fax: (808) 572-8378
www.SDHawaii.com   email: KRS@SDHawaii.com

October 17, 2001                                    *By Facsimile: 808/521-0977*

Doug Pothul and Scott Mitchell
Colliers Monroe Friedlander
220 South King Street, Ste. 1800
Honolulu, Hawaii 96813

    RE:   Pukalani Country Club

Dear Doug and Scott:

    Thank you for forwarding Sport's Shinko's counteroffer dated October 12, 2001, which was faxed to our office after it closed last Friday. Attached please find our counter proposal.

Sincerely,

Mark R. Walker
Vice President

104 3272

```
 1              IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                          STATE OF HAWAII
 3       -------------------------------------------
 4       SPORTS SHINKO (USA) CO., LTD., a Delaware
 5       Corporation; SPORTS SHINKO (MILILANI)
 6       CO., LTD., a Hawaii corporation, et al.,
 7                 Plaintiff,
 8          vs.               Case No. 02-1-2766-11 (EEH)
 9       RESORT MANAGEMENT SERVICES
10       (HAWAII), INC., a Hawaii corporation,
11       YASUO NISHIDA, SATOSHI KINOSHITA, et al.
12                 Defendants.
13       -------------------------------------------
14
15              DEPOSITION OF SATOSHI KINOSHITA
16                          (Volume III)
17
18       Taken on behalf of the Plaintiff at Alston Hunt Floyd &
19       Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,
20       Hawaii 96813, commencing at 9:00 a.m., Thursday, April
21       21, 2005, pursuant to Notice.
22
23       BEFORE:    BARBARA ACOBA, CSR No. 412, RPR
24                  Notary Public, State of Hawaii
25
```

***ATTORNEY-CLIENT PRIVILEGE***                          197

```
 1   APPEARANCES:
 2   For Plaintiff:          GLENN MELCHINGER, Esq.
 3                           ALSTON HUNT FLOYD & ING
 4                           ASB Tower
 5                           1001 Bishop St., 18th Floor
 6                           Honolulu, Hawaii 96813
 7
 8   For Defendant SATOSHI KINOSHITA:
 9                           JOHN KOMEIJI, Esq.
10                           WATANABE ING KAWASHIMA & KOMEIJI
11                           First Hawaiian Center
12                           999 Bishop St., 23rd Floor
13                           Honolulu, Hawaii 96813
14
15
16   Also Present:           STEVEN SILVER - Interpreter
```

```
 1      A.   It wasn't me, however, I don't recall whether
 2  it was Mr. Mukai who may have raised that issue or
 3  whether I may have communicated that issue at the
 4  request of the president to Mr. Mukai.
 5      Q.   Okay.  So the president may have had that
 6  specific question about what would happen in litigation
 7  or Mr. Mukai may have raised it and you don't recall
 8  which one it is; is that right?
 9      A.   Yes.
10           MR. MELCHINGER:  Call this Exhibit 43.
11           (Exhibit 43 marked for identification.)
12  BY MR. MELCHINGER:
13      Q.   When you've had a chance to look at this, the
14  document marked Exhibit 43, can you let me know if
15  you've seen it before.
16      A.   Yes.
17           MR. KOMEIJI:  You want him to review it now?
18           MR. MELCHINGER:  Not yet.
19  BY MR. MELCHINGER:
20      Q.   Do you know -- can you tell me what this is,
21  what this document is, marked Exhibit 43?
22      A.   This is an interim report regarding the
23  progress of our efforts to sell assets and it
24  concerns -- excuse me, it reflects a summary that I
25  prepared and then reported to the president and to
```

***ATTORNEY-CLIENT PRIVILEGE***                    212

1   Mr. Fukuda in Japan with regard to an offer that we had
2   received from the broker, Colliers Monroe Friedlander,
3   with whom we had a listing agreement in place with
4   regard to the Pukulani Country Club.
5       Q.   And this report's about an initial offer from
6   Smith Development, then a Sports Shinko counteroffer,
7   and then another revised offer from Smith Development;
8   is that right?
9           MR. KOMEIJI:  Read the whole document now,
10  because he's asking a question about the document.
11          THE WITNESS:  Yes.  That is correct.
12  BY MR. MELCHINGER:
13      Q.   Who handled negotiations with Smith?  For
14  example, did Mukai's office handle it?  Did Colliers
15  handle it?  Who communicated with Smith?
16      A.   I believe it was Colliers.
17      Q.   Did they prepare the counteroffer to Smith or
18  did Mukai, Frank Mukai's office?
19      A.   The counteroffer from the Sports Shinko side
20  that's referred to here, that was something that was
21  discussed and decided by the president of the company
22  and Mr. Fukuda.  However, as I sit here today, I do not
23  recall who it was that actually put the formal
24  counteroffer in writing and conveyed it to Smith.
25      Q.   Yesterday you testified that you had met, I

```
 1   think, with Mr. Dowling; is that right?
 2        A.   Yes.
 3        Q.   Was anybody else present at that meeting with
 4   Mr. Dowling?
 5        A.   No.
 6        Q.   You individually and Mr. Dowling alone?
 7        A.   Yes.
 8        Q.   And that was towards the end of 2001.  Do you
 9   remember a month perhaps?
10        A.   I'm pretty sure that it was either October or
11   November.
12        Q.   And you said, as I recall, that you discussed
13   with Mr. Dowling whether or not if he purchased the
14   properties he would assume the management agreements
15   with RMS; is that right?
16        A.   Yes.
17        Q.   How about as to Colliers when they talked with
18   Smith, was there an instruction to Colliers to ask
19   whether Smith would assume the management agreements?
20        A.   No.  And the reason for that is this, at least
21   as best as I can recall, in the case of Dowling, Sports
22   Shinko had a prior relationship with Dowling because
23   Dowling had purchased from Sports Shinko several lots,
24   residential development sites, at the Pukulani Country
25   Club on Maui around 1995 or 1996.  He had purchased
```

1  several lots at a time at different instances from us
2  and then had gone on to develop those sites and sell off
3  residences.  So we had this tie with Dowling at the
4  Pukulani Country Club since, as I stated, around 1996 or
5  1995.  Mr. Dowling said that he wanted to meet with me
6  and he expressed his interest in purchasing Pukulani and
7  it was at that time that I explained to him that there
8  was this company, RMS, that was managing the property
9  and I asked if he might be willing to assume the
10 contract with them.  However, the most important thing
11 that I conveyed to him at that meeting was that if he
12 wanted to tender an offer, that he submit it through
13 Colliers as we had a listing agreement with Colliers in
14 place.  However, in the case of Smith Development, they
15 had submitted their offer through Colliers, so I never
16 had the opportunity, if you will, to discuss that issue
17 with them and, in short, I never did.
18           MR. MELCHINGER:  Can we mark that as 44,
19 please.
20           (Exhibit 44 marked for identification.)
21 BY MR. MELCHINGER:
22     Q.    And when you've had a chance to review 44,
23 could you please let me know whether you've seen this
24 document before.
25     A.    Yes, I have.

```
 1                    C E R T I F I C A T E

 2   STATE OF HAWAII              )

 3   CITY AND COUNTY OF HONOLULU  )

 4          I, BARBARA ACOBA, Certified Shorthand

 5   Reporter and Notary Public, State of Hawaii, do

 6   hereby certify:

 7          That on Thursday, April 21, 2005, at

 8   9:00 a.m., appeared before me SATOSHI KINOSHITA, the

 9   witness whose deposition is contained herein; that

10   prior to being examined he was by me duly sworn;

11          That the deposition was taken down by me

12   in machine shorthand and was thereafter reduced to

13   typewriting under my supervision; that the foregoing

14   represents, to the best of my ability, a true and

15   correct transcript of the proceedings had in the

16   foregoing matter.

17          I further certify that I am not an attorney

18   for any of the parties hereto, nor in any way concerned

19   with the cause.

20          Dated this 30th day of April, 2005,

21   in Honolulu, Hawaii.

22                      _____

23                      BARBARA ACOBA, CSR NO. 412

24                      Notary Public, State of Hawaii

25                      My Commission Exp: 10-22-2008
```