KOBAYASHI GROUP
Pauahi Towers, Suite 1570
1001 Bishop Street
Honolulu, HI 96813

December 11, 2001

Sports Shinko Hawaii
175 Poakalani Street
Honolulu, HI 96815

Gentlemen:

Thank you for providing us with the information on your properties. Based on our preliminary review, we would like to enter into a formal agreement to purchase the two (2) hotels, three (3) golf courses and the lands held for development. The following is a summary of our preliminary proposal.

Terms of Purchase:

| | | |
|---|---|---|
| Purchase Price | $22,000,000 | |
| Funding of Purchase | $100,000 | deposited in escrow upon completion of formal purchase agreement. |
| | $1,900,000 | cash at closing. |
| | $20,000,000 | to be financed. |
| Due Diligence: | 60 days | from date of acceptance of formal contract to purchase |
| Closing: | 30 days | after completion of Due Diligence. |

If the terms are acceptable, please acknowledge acceptance below. Upon receipt of acceptance, we will incorporate the terms into a formal contract.

Sincerely,

*[signature: Wayne Tanigawa]*
Wayne Tanigawa
Chief Financial Officer

Accepted and Approved:
Sports Shinko Hawaii

By: _____     Date: _____
Its: _____

EXHIBIT 24

EXHIBIT 54  4-4-05
S. Kinoshita

***ATTORNEY-CLIENT PRIVILEGE***                196

```
 1            IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
 2                        STATE OF HAWAII
 3    ------------------------------------------------
 4    SPORTS SHINKO (USA) CO., LTD., a Delaware
 5    Corporation; SPORTS SHINKO (MILILANI)
 6    CO., LTD., a Hawaii corporation, et al.,
 7            Plaintiff,
 8         vs.              Case No. 02-1-2766-11 (EEH)
 9    RESORT MANAGEMENT SERVICES
10    (HAWAII), INC., a Hawaii corporation,
11    YASUO NISHIDA, SATOSHI KINOSHITA, et al.
12            Defendants.
13    ------------------------------------------------
14
15              DEPOSITION OF SATOSHI KINOSHITA
16                         (Volume III)
17
18    Taken on behalf of the Plaintiff at Alston Hunt Floyd &
19    Ing, 1001 Bishop St., ASB Tower, 18th Floor, Honolulu,
20    Hawaii 96813, commencing at 9:00 a.m., Thursday, April
21    21, 2005, pursuant to Notice.
22
23    BEFORE:    BARBARA ACOBA, CSR No. 412, RPR
24               Notary Public, State of Hawaii
25
```

***ATTORNEY-CLIENT PRIVILEGE***                              197

```
 1   APPEARANCES:
 2   For Plaintiff:          GLENN MELCHINGER, Esq.
 3                           ALSTON HUNT FLOYD & ING
 4                           ASB Tower
 5                           1001 Bishop St., 18th Floor
 6                           Honolulu, Hawaii 96813
 7
 8   For Defendant SATOSHI KINOSHITA:
 9                           JOHN KOMEIJI, Esq.
10                           WATANABE ING KAWASHIMA & KOMEIJI
11                           First Hawaiian Center
12                           999 Bishop St., 23rd Floor
13                           Honolulu, Hawaii 96813
14
15
16   Also Present:           STEVEN SILVER - Interpreter
17
18
19
20
21
22
23
24
25
```

```
 1              (Back on the record at 1:00 p.m.)
 2   BY MR. MELCHINGER:
 3       Q.   We were talking about a meeting that you and
 4   Toshio had in Tokyo with Mr. Tanigawa from KG and what I
 5   wanted you to explain next was, what was the substance
 6   of that discussion?
 7       A.   What I recall as I sit here today was that the
 8   main point of the meeting was that Mr. Tanigawa
 9   expressed that the KG Group was strongly and seriously
10   interested in purchasing the assets.  In addition to
11   that, the president also noted that there was a resort
12   management over there and asked them whether they would
13   be willing to assume those arrangements or not, and also
14   the president noted that a long due diligence period
15   would not be possible and asked if the KG Group would
16   still be interested in the purchase despite that.
17           MR. MELCHINGER:  Mark that as 54, please.
18           (Exhibit 54 marked for identification.)
19   BY MR. MELCHINGER:
20       Q.   Showing you what's been marked as Exhibit 54 to
21   your deposition.  Have you seen that document before?
22       A.   Yes.
23       Q.   Again, this is a letter from the Kobayashi
24   Group and it's not addressed to anyone in particular.
25   Did this come to you directly?
```

1    A.    Yes.

2    Q.    And in Tokyo, is this the general terms of the
3  offer you were discussing with KG; is that right?  I'm
4  sorry, let's see if that's a response.  Was that a yes?

5    A.    Yes.

6    Q.    But you were discussing about the length of the
7  due diligence and none of these terms in Exhibit 54 were
8  set in stone or decided yet at that point; is that
9  right?

10         MR. KOMEIJI:   At the point of the meeting?
11         MR. MELCHINGER:   At the point of the meeting.
12 At the time of the meeting in Tokyo.
13         THE WITNESS:   That's right.
14 BY MR. MELCHINGER:

15   Q.    And again, this meeting was somewhere the end
16 of 2001; is that right?

17   A.    That's correct.

18   Q.    I'm sorry, I think you said late December; is
19 that right, of 2001?

20   A.    Yes.

21   Q.    The president then mentioned that there was RMS
22 and the management agreements, and what do you remember
23 specifically about what the president told KG about RMS?

24   A.    He told them that our company had delegated
25 responsibility for management to a management company

1  that belonged to a former employee of ours and that if
2  possible, if it was possible for KG to assume that
3  arrangement, that he would like to see that happen.
4      Q.  Did he say anything about RMS or the management
5  agreements?
6      A.  No.  No.  The rest of the discussion was
7  general, as I recall, and nothing else specific was
8  expressed.
9      Q.  Did Sports Shinko provide people from KG, at
10 that meeting in Tokyo, with any documents, for example,
11 any of the management agreements?
12     A.  No.
13     Q.  Was there any exchange of any documents between
14 KG and SS at all, at that meeting?
15     A.  No.
16     Q.  What was KG's response to what the president
17 said about RMS and the management agreements?
18     A.  They said that they would look into it.
19     Q.  Do you know how KG knew to send an offer or a
20 letter of interest to you in the first place?  Referring
21 to either -- actually, I'll go back to Exhibit 50.  The
22 December 4 letter.
23     A.  That would have been through Mr. Mukai.
24     Q.  Do you know if KG also sent this letter,
25 Exhibit 50, to Colliers?

```
 1                    C E R T I F I C A T E
 2   STATE OF HAWAII              )
 3   CITY AND COUNTY OF HONOLULU  )
 4            I, BARBARA ACOBA, Certified Shorthand
 5   Reporter and Notary Public, State of Hawaii, do
 6   hereby certify:
 7            That on Thursday, April 21, 2005, at
 8   9:00 a.m., appeared before me SATOSHI KINOSHITA, the
 9   witness whose deposition is contained herein; that
10   prior to being examined he was by me duly sworn;
11            That the deposition was taken down by me
12   in machine shorthand and was thereafter reduced to
13   typewriting under my supervision; that the foregoing
14   represents, to the best of my ability, a true and
15   correct transcript of the proceedings had in the
16   foregoing matter.
17            I further certify that I am not an attorney
18   for any of the parties hereto, nor in any way concerned
19   with the cause.
20            Dated this 30th day of April, 2005,
21   in Honolulu, Hawaii.
22
23                   BARBARA ACOBA, CSR NO. 412
24                   Notary Public, State of Hawaii
25                   My Commission Exp: 10-22-2008
```