PRICE OKAMOTO HIMENO & LUM

WARREN PRICE III        1212
ROBERT A. MARKS         2163
707 Richards Street, Suite 728
Honolulu, Hawaii  96813
Phone: 808.538.1113
Fax: 808.533.0549
E-mail:  wprice@pohlhawaii.com
         ram@pohlhawaii.com

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation, <br><br>        Plaintiff, <br><br>  vs. <br><br>QK HOTEL, LLC, a Hawaii limited liability company, et al., <br><br>        Defendants, <br><br>  and <br><br>FRANKLIN K. MUKAI, <br><br>        Third-Party Plaintiff, <br><br>  vs. <br><br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al., | CV 04-00124 ACK-BMK <br><br>CONSOLIDATED CASES <br><br>REPLY MEMORANDUM IN SUPPORT OF KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CV NO. 04-00128 ACK-BMK; DECLARATION OF ROBERT A. MARKS; EXHIBITS U - V; CERTIFICATE OF SERVICE <br><br>DATE:      March 20, 2006 <br>TIME:      9:30 am <br>JUDGE:   Hon. Alan C. Kay |

| | |
|---|---|
| Third-Party Defendants. | |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>PUKALANI GOLF CLUB, LLC, a Hawaii limited liability company, et al.,<br><br>    Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>    Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO CO., LTD., a Japan Corporation, et al.,<br><br>    Third-Party Defendants | CV 04-00125 ACK-BMK |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br><br>    Plaintiff,<br><br>  vs.<br><br>KIAHUNA GOLF CLUB, LLC, a Hawaii limited liability company, et al.,<br><br>    Defendants,<br><br>  and<br><br>FRANKLIN K. MUKAI,<br><br>    Third-Party Plaintiff,<br><br>  vs.<br><br>SPORTS SHINKO CO., LTD., a Delaware Corporation, et al.,<br><br>    Third-Party Defendants. | CV 04-00126 ACK-BMK |

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japan corporation,<br>　　　　Plaintiff,<br>　vs.<br>OR HOTEL, LLC, a Hawaii limited liability company, et al.,<br>　　　　Defendants,<br>　and<br>FRANKLIN K. MUKAI,<br>　　　　Third-Party Plaintiff,<br>　vs.<br>SPORTS SHINKO (USA) CO., LTD., a Delaware Corporation, et al.,<br>　　　　Third-Party Defendants. | CV 04-00127 ACK-BMK |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation,<br>　　　　Plaintiff,<br>　vs.<br>MILILANI GOLF CLUB, LLC, a Hawaii limited liability company; et al.,<br>　　　　Defendants,<br>　and<br>FRANKLIN K. MUKAI,<br>　　　　Third-Party Plaintiff,<br>　vs.<br>SPORTS SHINKO CO., LTD., a Japan Corporation, et al.,<br>　　　　Third-Party Defendants. | CV 04-00128 ACK-BMK |

3

## TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  EACH OF PLAINTIFF'S ARGUMENTS IS WITHOUT MERIT ............. 2

    A.   Plaintiff's "Factual Background" Discussion .................................... 2

    B.   The "Imputation" Issue Is Irrelevant .................................................. 2

    C.   UFTA Clearly Does Not Apply In A Non Arm's Length Transaction ........................................................................................... 6

    D.   The "Necessary Party" Issue Is Irrelevant ......................................... 8

    E.   Whether Toshio Was An "Insider" Is Irrelevant ............................... 8

III. RELIEF UNDER RULE 56(f) SHOULD BE DENIED ............................. 9

IV.  CONCLUSION .................................................................................................. 10

TABLE OF AUTHORITIES

STATUTES

| | |
|---|---|
| Haw. Rev. Stat. Ch. 651C, Hawaii Uniform Fraudulent Transfer Act, ("The Act") | 1, 6, 7, 8 |

CASES

| | |
|---|---|
| Am. Surety Co. v. Pauly, 170 U.S. 133 (1898) | 4 |
| FDIC v. O'Melveny & Myers, 61 F.3d 15 (9th Cir. 1995) | 5 |
| Henry Waterhouse Trust Co., Ltd. v. Home Ins. Co. of Hawaii, Ltd., 27 Haw. 572 (1923) | 4 |
| In re Silicon Graphics, Inc. Secs. Litig., 183 F.3d 970 (9th Cir. 1999) | 9 |
| Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147 (2nd Cir. 2003) | 4 |
| T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626 (9th Cir. 1987) | 3 |
| Wailua Assocs. v. Aetna Cas. And Surety Co., 183 F.R.D. 550 (D. Hawaii 1998) | 3 |
| Wood v. Stark, 1 Haw. 8 (Kingdom, 1847) | 6 |

OTHER AUTHORITIES

| | |
|---|---|
| 3 Fletcher Cyclopedia of Corporations § 834 (2002 and 2005 supp.) | 4 |
| 3 Fletcher Cyclopedia of Corporations § 830 (2002 and 2005 supp.) | 5 |
| Restatement (Second) of Agency § 282(1) (1958) | 4 |
| Restatement (Second) of Agency § 282(2)(c) (1958) | 5 |

**REPLY MEMORANDUM IN SUPPORT OF
KG DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
IN CV NO. 04-00128 ACK-BMK**

**I.    INTRODUCTION**

This case is an unfortunate misuse of the Uniform Fraudulent Transfer Act, HRS Ch. 651C.[1] This is not an action by a trustee or receiver. It is not a case brought by an arm's length, outside creditor. This is a case brought by a creditor who, in cahoots with the debtor it owns and controls, allegedly 'defrauded' itself. If there is a recovery, it will benefit the Plaintiff, not an arm's length creditor.[2]

Plaintiff complains that KG's Motion is simplistic and without legal authority. It is right. Indeed, it is a simple proposition – and one not requiring a body of case law – that a corporation cannot 'defraud' itself.

Plaintiff attempts to obscure this reality with a long history of the transaction and a lengthy 'legal' discussion of various issues, and urges the Court to deny this Motion because there are 'questions of fact.' This is not true – no matter how many times plaintiff says it is.

---

[1]    Referred to as "the Act" or "UFTA".

[2]    "There were loans. There were creditors. As a result of the bankruptcy of Sports Shinko Japan, basically the claims of creditors were resolved. ... [These cases] are now being prosecuted for the benefit of the new owners[.] See statement of Paul Alston, counsel for plaintiffs, transcript of March 6, 2006 Status Conference at 6, attached as ex. U (emphasis added).

1

The reason for this is simply because every material fact relating to this Motion has been admitted by plaintiff or is not otherwise disputable. Indeed, KG has assumed all the facts pled by plaintiff as true, and based on those facts – as bolstered by its opposition memo – KG is entitled to Summary Judgment.

## II.    EACH OF PLAINTIFF'S ARGUMENTS IS WITHOUT MERIT

### A.    Plaintiff's "Factual Background" Discussion

Plaintiff's "factual background" discussion is another version of the Grand Conspiracy claim alleged in plaintiff's Complaint.[3] For the purposes of this Motion, to the extent that the 'story' spun by plaintiff in this section is consistent with the Complaint, this was already <u>assumed to be true</u>.

And, as discussed in KG's Memo, it is in alleging this Grand Conspiracy that plaintiffs have sown the seed of the destruction of its case against KG.

### B.    The "Imputation" Issue Is Irrelevant

Whether Toshio's knowledge or intent is 'imputed' to either the Creditor or Debtor in this case is irrelevant. The issue is whether Toshio <u>controlled</u> the acts of the Creditor and Debtor.

---

[3] This conspiracy is sometimes referred to as "the plan" in the Second Amended Complaint ("Cplt") (attached as ex. A to Motion). Cplt ¶¶ 8, 16-49, 65, 69, 71, 73.

And, <u>according to plaintiff's Complaint</u>, he certainly did.[4]  Indeed, his control was so total that he could literally cause every company up and down the line to do as he directed.  The Grand Conspiracy required this total control -- alleged by plaintiff in its Complaint, and reiterated in plaintiff's Memo in Opposition to this Motion.[5]

---

[4]   Cplt ¶¶ 1, 8, 12, 16-49; <u>see also</u> Stipulation in Lieu of Exhibits B-E filed February 28, 2006 ("Stipulation in Lieu"), passim, ex. F, I, J, K, L, M, O, P and Q.

[5]   Plaintiff asserts that KG has failed to prove that "Toshio actually exerted operational control".  Plaintiff's CSOF at 6.  Plaintiff is wrong.  KG has proven that <u>Toshio personally approved the sale</u> of the Hawaii properties to KG.  <u>See</u> ex. Q at 166-67, establishing that the Purchase and Sale Agreement ("PSA"), the definitive agreement to sell Sports Shinko's Hawaii assets to KG, was executed pursuant to Toshio's explicit, personal instruction:

> Q:   (by Mr. Melchinger) And you're signing [the PSA] on behalf of all the Sports Shinko Companies that are party to this agreement; is that right?
>
> A:   (by Satoshi Kinoshita) Yes.  I was instructed to sign by [Toshio].

Exhibit Q also establishes that Toshio was sent a complete translation of the PSA before he directed Satoshi to execute it.  <u>Id</u>. at 262.

This evidence establishes that Toshio "actually exerted operational control" over the sale of the Hawaii properties to KG, and Plaintiff has failed to provide any contrary evidence.  This fact is therefore proven for purposes of this Motion.  <u>See Wailua Assocs. v. Aetna Cas. and Surety Co.</u>, 183 F.R.D. 550, 554 (D. Hawaii 1998) (Kay, J.) ("if the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment" (quoting <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

3

As the Court knows, the issue of "imputation" relates to whether a corporation can be held responsible for the acts of its officers and directors. The principle is that the stockholders of the corporation should not be penalized for the bad acts of its managers.

In this case, of course, this entire principle is irrelevant, and there are clearly no 'facts' that must be left for trial. [6] Toshio owned and controlled both

---

[6] Without authority, plaintiff states that imputation is a question of fact. Mem. Opp. 14. That is incorrect; it is a question of law. 3 Fletcher Cyclopedia of Corporations § 834 (2002 and 2005 supp.) ("Fletcher") ("Whether the corporate officer or agent was possessed of actual knowledge of facts is ordinarily one of fact for the jury. Whether the knowledge of, or notice to, an officer or agent of a corporation is to be imputed to the corporation is a question of law for the court.") (emphasis added; authorities omitted).

In any event, the "adverse interest rule" relied upon by Plaintiff – and the entire imputation question – is irrelevant. But even if that is incorrect, Toshio's knowledge is properly imputed to the companies he owned and controlled for various reasons.

**First**, "[Toshio] was essentially like a sole shareholder." Ex. Q at 29. See also Memorandum in Support of Motion 1-12; exs. F, I-M, O-P, and Q at 166-67, 262 and n. 11, infra. Under the "sole owner" rule, knowledge of the owner is imputed to the company. See e.g, Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 165 (2nd Cir. 2003) (when "the persons dominating and controlling the corporation orchestrated the fraudulent conduct, their knowledge is imputed to the corporation as principal under the 'sole actor' rule, which negates the adverse interest exception when the principal and agent are one and the same.") (citations and internal quotations omitted.)

**Second**, the adverse interest rule applies when a corporate officer is acting adversely and secretly as to the corporation. Henry Waterhouse Trust Co., Ltd. v. Home Ins. Co. of Hawaii, Ltd., 27 Haw. 572, 580 (1923), quoting Am. Surety Co. v. Pauly, 170 U.S. 133, 157 (1898); Restatement (Second) of Agency § 282(1) (1958). The evidence shows that the members of plaintiff's board of directors – Toshio, his son Takeshi, and Tsugio Fukuda – knew about and approved the sale to

4

corporations – the Creditor and Debtor – and he could cause them to implement the Grand Conspiracy. Plaintiff has admitted this.[7]

Plaintiff's claim that all of Toshio's companies "Are Entitled To Be Treated As Separate Entities Until Defendants Prove Otherwise" is utter nonsense. KG

---

KG. See exs. V (SS-Mililani corporate resolution and related documents of debtor SS-Mililani authorizing the sale to KG) and O (identifying plaintiff's directors).

**Third**, while a corporation's misconduct should not be imputed to a receiver, former managers' misconduct should be imputed to a corporation's subsequent owner. FDIC v. O'Melveny & Myers, 61 F.3d 15, 19 (9th Cir. 1995) **("A receiver … was neither a party to the original inequitable conduct nor is it in a position to take action prior to assuming the [the company's] assets to cure any associated defects or force the [company] to pay for incurable defects. This places the receiver in stark contrast to the normal successor in interest who voluntarily purchases [a company] and can adjust the purchase price for the diminished value of the [company's] assets due to their associated equitable defenses. In such cases, the [company] receives less consideration for its assets because of its inequitable conduct, thus bearing the cost of its own wrong.")**

Since KG acquired plaintiffs' Hawaii assets, plaintiffs have a new shareholder – a subsidiary of Goldman Sachs, which purchased SS-Japan's stock out of bankruptcy. Ex. U at 6. Like the successor owner described in O'Melveny, Goldman acquired the stock with notice of Toshio's alleged misconduct.

The inescapable reality is, no party to these actions has suffered a loss. Goldman acquired the stock with notice of Toshio's alleged misconduct and therefore paid less. A recovery by plaintiff would be a windfall to Goldman.

**Fourth**, the adverse interest rule does not apply where the corporation retains some of the benefit obtained by the agent acting fraudulently. Restatement § 282(2)(c). Plaintiff has not sought to rescind the sale of the sewage plant to KG. By seeking to rescind only parts of the transaction, Plaintiff has ratified it and cannot take advantage of the adverse interest rule. Accord, 3 Fletcher § 830 ("If a corporation ratifies an unauthorized contract … by an officer, it is chargeable with the officer's knowledge of fraud, illegality or other facts in the transaction.").

[7]   Cplt ¶¶ 1, 8, 12, 16; Stipulation in Lieu, passim; ex. F; see also exs. I, O and Q.

5

does not have to 'prove' anything. Plaintiffs have <u>admitted</u> that notwithstanding their corporate niceties, they were, in fact, controlled by Toshio.[8]

### C. UFTA Clearly Does Not Apply In A Non Arm's Length Transaction

Only an arm's length creditor can sue under the Act. This is not KG's "own interpretation of the UFTA". To the contrary, this has been well-established law in Hawaii for over 150 years.[9] It is also obvious that the Hawaii Legislature did not intend to create a statute that would allow commonly owned and controlled corporations – shifting money around among subsidiaries – to use the UFTA to <u>commit</u> fraud.

Moreover, plaintiff's claim that, indeed, the internal loans were 'arms length' does not create a 'question of fact' to defeat this Motion – even if true.

---

[8]  <u>See</u> n.7.

[9]  Recognition that fraudulent transfer law protects "just claims of honest creditors" was established in the very first case reported in Hawaii:

> [The law of fraudulent transfers] is a rule of law, founded in integrity and fair dealing between man and man; a rule of law based on the great principles of morality and public policy -- for you will see at once, that if we were allowed, when we find that, judgments are existing against us, or are about to be recovered against us; if we were allowed, I say, in such circumstances to transfer our property into the hands of others, and thus defeat the <u>just claims of honest creditors</u>, there would be no safety in the every day transactions of life -- no safety in that credit which we are daily giving and lending to each other.

<u>Wood v. Stark</u>, 1 Haw. 8, 11 (Kingdom, 1847) (emphasis added).

6

This is simply because the Japan creditors – who arguably were (but no longer are[10]) third party beneficiaries of these loans – are not the plaintiffs in this case.

The plaintiff in this case, while now having different shareholders, is the very same Creditor who, at the time of the transfer, was controlled by the same person who controlled the Debtor, and who implemented the Grand Conspiracy – Toshio.[11]  Plaintiff, as Toshio's successor, stands in his shoes, and was on both sides of the transaction, and cannot invoke the Act as the Japan creditors might have been able to – if they had sued.

---

[10]   "There were creditors[, but] as a result of the bankruptcy of Sports Shinko Japan, basically the claims of creditors were resolved[.] … The matter is [now] being prosecuted for the benefit of [Goldman Sachs affiliates,] the new owners[.]" See ex. U at 6.

[11]   Toshio controlled 100% of the stock of SS-Japan.  Toshio owned 58⅓% of the stock outright.  See Stipulation in Lieu at ¶ 2.a.  A construction company owned by Toshio's three sons owned 33⅓% of the stock.  Id., ¶¶ 2.b., 3.  The third shareholder, which owned 8⅓% of the stock, was owned by SS-Japan.  Id., ¶¶ 2.c., 4.

SS-Japan owned 89% of the stock of plaintiff SS-USA.  Ex. F at 13, 30.  The other 11% of the stock was owned by Japan domestic corporate subsidiaries of SS-Japan, so in effect, Toshio owned 100% of plaintiff.

The record also shows that Toshio's power, vis a vis his sons, was "virtually plenary."  Satoshi, Toshio's oldest son, testified as follows:  "when I joined the company in 1991, I was told by [Toshio] that given the fact that I was [Toshio's] son, that if I didn't listen to [Toshio], then none of the other employees and officers of the company would want to listen to [Toshio].  So no, I didn't question [Toshio] about the reasons behind what he was instructing me to do."  Ex. Q at 29-30 and 45.

7

**D.      The "Necessary Party" Issue Is Irrelevant**

Whether the Debtor is a necessary party in this case is irrelevant.  KG raised the issue as yet another example of why the Act cannot be used by plaintiff in this case.

Indeed, the fact that plaintiff did not name the Debtor – the only party who can raise defenses to the alleged 'debt' – underscores that this entire case is a sham.  In a <u>legitimate</u> claim under the Act, the third party transferee has a shield between it and the Creditor – the Debtor.  In this case, however, because the Debtor and Creditor were (and still are) jointly controlled, the Creditor – unilaterally – removed that shield.[12]  Why?  Because it could.  What does this show?  That this case is a giant sham.

**E.      Whether Toshio Was An "Insider" Is Irrelevant**

Plaintiff claims that Toshio was an "insider" to the Debtor under the Act.[13]  KG simply pointed out that he was also an "insider" to the Creditor under the Act,

---

[12] "Suit against [the debtor SS companies, all clients of the Alston Hunt firm], is futile and unnecessary, [but] the Debtor entities <u>will stipulate as to the validity of the intercompany debts</u> if the court finds that the undisputed existence of these debts is a prerequisite to this action proceeding."  Mem. Opp. at 19; n. 6 (emphasis added).

This is stunning considering the plaintiffs have thus far been unable to identify the specific promissory notes they are suing upon, or make original promissory notes available for inspection.  <u>See</u> Marks decl. at ¶ 5, attached.

[13]     Cplt ¶ 8.

thus underscoring his total control of both companies.[14]

KG agrees with plaintiff that this issue is irrelevant. What is relevant is what plaintiff has pled and cannot dispute – that Toshio had control of the Creditor and Debtor as evidenced by the Grand Conspiracy.[15]

## III.   RELIEF UNDER RULE 56(f) SHOULD BE DENIED

Plaintiff attempts to defer a ruling on this Motion so it can complete pending discovery against Defendant Mukai and non-party Satoshi Kinoshita. This is obviously not grounds to defer this Motion by KG. KG has assumed everything plaintiff has alleged against Mukai is true, and this discovery has nothing to do with this Motion. Accordingly, a ruling on this Motion should not be deferred for the pending discovery.[16]

---

[14]   Memorandum in Support of Motion at 20.

[15]   See n. 4.

[16]   The declaration is also deficient under controlling case law.

> Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery, and <u>specifying how those facts would preclude summary judgment</u>. … Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.

<u>In re Silicon Graphics, Inc. Secs. Litig.</u>, 183 F.3d 970, 989 (9th Cir. 1999) (internal quotes, brackets and citations omitted; emphasis added).

Note that an extraordinary amount of discovery has been conducted in this case. These lawsuits were filed over two years ago. The Alston firm has been working on litigation related to Sports Shinko's claims against KG and Mukai since August

9

**IV.    CONCLUSION**

Despite 28 pages of 'legal reasoning', plaintiff does not once address *its own Complaint*. <u>That</u> is the core of KG's Motion. And, in its Complaint plaintiff admits – indeed alleges repeatedly[17] – that Toshio controlled all the companies sufficiently to 'cause' the Grand Conspiracy resulting in the fraudulent transfer. As pointed out in KG's Memo, to accomplish what plaintiff claims Toshio did in this case, Toshio had:

(1) to 'cause' SS-Japan

  (2) to 'cause' SS-USA (**<u>the victim</u>**)

    (3) to 'cause' SS-HAWAII

      (4) to 'cause' SS-MILILANI (**<u>the perpetrator</u>**)

        (5) to 'fraudulently transfer' the Mililani Properties to KG

**<u>IF</u>** this is all true, which this Court must presume for the purpose of this Motion, then there are no questions of fact necessary for a jury to decide in this case.

---

2002 or earlier. Melchinger decl. attached to plaintiff's Mem. Opp. at ¶ 3. Approximately 200 boxes of plaintiffs' documents have been made available to KG, including many thousands of documents in the Japanese language. There have been dozens of additional boxes produced by KG and third parties. Six written discovery requests between KG and plaintiffs have been propounded and answered. See Marks decl. at ¶ 6, attached.

[17]    Cplt ¶¶ 1, 8, 12, 16-49.

10

It is respectfully submitted that because plaintiff's claim clearly contravenes legislative intent – indeed common sense – this Motion should be granted because a corporation cannot defraud itself. It is truly as 'simplistic' as that.

DATED:   Honolulu, Hawaii, March 9, 2006.

/s/ Robert A. Marks
WARREN PRICE, III
ROBERT A. MARKS

Attorneys for Defendants
KIAHUNA GOLF CLUB, LLC,
KG KAUAI DEVELOPMENT, LLC,
PUKALANI GOLF CLUB, LLC,
KG MAUI DEVELOPMENT, LLC,
MILILANI GOLF CLUB, LLC,
QK HOTEL, LLC, OR HOTEL, LLC,
AND KG HOLDINGS, LLC

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing was served electronically through CM/ECF on the following on March 9, 2006:

| | |
|---|---|
| PAUL ALSTON, ESQ.<br>palston@ahfi.com<br>GLENN T. MELCHINGER, ESQ.<br>gmelchinger@ahfi.com<br>Attorneys for Plaintiffs<br>SPORTS SHINKO CO., LTD. and<br>SPORTS SHINKO (USA) CO., LTD. | WILLIAM BORDNER, ESQ.<br>bbordner@bmbe-law.com<br>Attorney for Defendant<br>FRANKLIN K. MUKAI |

      DATED: Honolulu, Hawaii, March 9, 2006.

                                            /s/ Robert A. Marks
                                            WARREN PRICE III
                                            ROBERT A. MARKS

                                            Attorneys for Defendants
                                            KIAHUNA GOLF CLUB, LLC,
                                            KG KAUAI DEVELOPMENT, LLC,
                                              PUKALANI GOLF CLUB, LLC,
                                              KG MAUI DEVELOPMENT, LLC,
                                              MILILANI GOLF CLUB, LLC,
                                              QK HOTEL, LLC, OR HOTEL, LLC,
                                              AND KG HOLDINGS