## OPINION MEMORANDUM OF MICHIHIRO MORI REGARDING

## THE JAPAN CORPORATE REORGANIZATION LAW

This memorandum addresses the issues discussed in the Opinion Memorandum on Japan Corporate Reorganization Law submitted by Mr. Takeo Kosugi ("Kosugi Opinion") regarding the relevance of the Japan Corporate Reorganization Law ("JCRL") to issues, statements and conclusions contained in the Order Denying Defendants' Motion for Summary Judgment in Civ. No. 04-00128 ACK/BMK ("Order").[1]

### I.    INTRODUCTION

This opinion provides an analysis of Japan law and its application to the issues raised in the above-mentioned action under the assumption that Japan law is determined to be the law applicable to the defenses in this case. Because Mr. Kosugi opines in his analysis on the JCRL and its application to this case,[2] for the purposes of this memorandum and the analysis contained herein, I have assumed that Japan law applies.

Nonetheless, it should be noted that Japan law in fact will not be applicable to the question of who has standing to bring these claims, or whether Sports Shinko Co., Ltd. ("SS-Japan") should be deemed to be "innocent creditors" under Hawaii's law concerning

---

[1] The JCRL in effect at the time of the filing of Sports Shinko Co., Ltd.'s ("SS-Japan") corporate reorganization proceedings was Law No. 172 of 1952, including amendments up until Law No. 80 of 2001. The JCRL was completely amended by Law No. 154 of 2002. Nevertheless, as this 2002 amendment is not retroactive, the former law before this amendment is applicable to the case, and "the JCRL" therefore refers to the former law.

[2] Mr. Kosugi states in the Kosugi Opinion on page 4 that "The debtor company in the underlying corporate reorganization proceedings, SS-J, is a Japanese company with a business office in Japan. Japanese laws would govern the rights of shareholders, creditors and other interested parties in the debtor company. The JCRL is applied not only to assets located in Japan but also those located all over the world." However, he does not point out expressly which defense raised by the KG Defendants the JCRL should govern.

EXHIBIT M-1

fraudulent transfers. Under the principles of Japan law on conflict of laws, generally speaking, standing for litigation should be decided by the law where the court dealing with the case is located (in this instance the laws of Hawaii). Similarly, the cancellation of fraudulent transfers should also be governed by Hawaii law.[3]

Despite the fact that SS-Japan is a Japan company which was in the process of undergoing corporate reorganization proceedings under the JCRL at the time this action was initiated, it does not logically follow that the JCRL governs the defenses raised by the KG Defendants (all of whom are Hawaii LLCs) against either SS-Japan or Sports Shinko (USA) Co., Ltd. (a Delaware company) in a lawsuit brought in Hawaii and involving claims under Hawaii law. Even the Japan Insolvency Law does not take the position that the power of *kanzainin* ("Trustee") to manage and dispose of the debtor's assets located abroad shall be automatically recognized in foreign countries. To the contrary, the JCRL includes clauses which suggest or anticipate that a foreign trustee appointed by a foreign court - or if there is no such trustee, the debtor company itself - has the right to manage and dispose of the debtor's properties in foreign countries (JCRL Art. 289-2, 289-4 and 289-5).

## II.    SUMMARY OF ISSUES AND CONCLUSIONS

The KG Defendants argue, based on Mr. Kosugi's opinion, that the Trustee of SS-Japan had no special power to pursue claims against the KG Defendants and was subject to all

---

[3] There is a discussion in Japan on the applicable laws in the case of a cancellation of a fraudulent transfer. The commonly accepted view of this issue is that the applicable laws in such a case are both the law applicable to the alleged fraudulent transfer and the law applicable to the Plaintiff's claim. In this case, Hawaii law is the law applicable to the alleged fraudulent conveyance according to Article 17.7 of the Purchase and Sale Agreement between certain Sports Shinko Hawaii subsidiaries and KG dated January 15, 2002. In terms of the other law, *i.e.*, the one applicable to the Plaintiff's claim, this should be the law of where the loan to the Hawaii subsidiaries was made or where the application of the loan was made, provided that there is no explicit agreement on the law governing the claim. Thus, it will most likely be Hawaii law.

affirmative defenses that the KG Defendants could assert against pre-reorganization SS-Japan (see Defendant's Memorandum in Support of Motion at 8).

This argument is not only confusing, but also misleading, in that the KG Defendants simply conclude that the Trustee of SS-Japan (or current SS-Japan) is subject to "all" affirmative defenses based only on the fact that the Trustee of SS-Japan exercises the rights of SS-Japan, but is not exercising special powers specific to the Trustee.

Pursuant to Japan law, the Trustee of SS-Japan did not exercise any special power bestowed on him by the JCRL, but rather pursued claims based on the rights that SS-Japan originally had. However, this fact does not automatically lead to the conclusion that the Trustee of SS-Japan (or currently, SS-Japan itself) shall not be deemed to be "innocent" for the purpose of the court's analysis on Issue A of the order denying the Defendant's motion for summary judgment (Order at 15-18).

Rather, this opinion memorandum concludes, based on the analysis of Japan law stated below, that:

    (1) a Trustee under the JCRL will, in practical terms, never be subject to a defense which is based on the disloyal or improper acts of the debtor's previous management or previous owner, and which claims that the Trustee or the debtor company under corporate reorganization proceedings is consequently not "innocent"; and

    (2) a debtor company which completes the corporate reorganization process should not be subject to defenses based on the acts of the debtor's prior management or previous owner, at least in the case where the Trustee initiated a lawsuit during the reorganization proceedings and the reorganization was completed while such lawsuit was still pending.

3

III.    ANALYSIS

A.    TRUSTEE'S POSITION

Upon the commencement of a reorganization proceedings under the JCRL, the court appoints a Trustee with the exclusive power to manage the debtor's business and assets under the court's supervision.

While there is no Japan statute that directly addresses the position of a Trustee, the courts in Japan have stated that the Trustee has a position similar to the position of a creditor who levies on a debtor's assets.[4] It is generally understood that the Trustee is in a third-party position independent of a debtor.[5] The Trustee, therefore, is not only given special powers such as *hinin-ken* (avoidance power) and the right to cancel executory contracts, but he or she may also be exempted from defenses that could otherwise have been asserted against the pre-reorganization debtor. This is true even when the Trustee is exercising the debtor's rights other than through the use of the Trustee's special powers. The following are precedents from Japan courts that establish that the Trustee in bankruptcy is not subject to defenses that could have been asserted against the pre-reorganization debtor.[6]

In *Furukawa Kogyo K.K. v. Trustee for Shinto Bussan K.K. 140 Hanrei Times 124* (Dec. 13, 1962), a debtor, who later became bankrupt, had conspired with a property owner to

---

[4]  *Furukawa Kogyo K.K. v. Trustee for Shinto Bussan K.K., 140 Hanrei Times 124* (The Supreme Court of Japan, Dec. 13, 1962); *Ichitaro Hayasaka v. Trustee for Mitsuo Kasuya, 25.5 Minshu 779* (The Supreme Court of Japan, July 16, 1971); *In re undisclosed parties, 678 Kinpo 21* (The Supreme Court of Japan, Feb. 16, 1973); *Shigeo Yamada v. Hidenobu Komatsu & et al, 1134 Hanrei Jiho 75* (The Supreme Court of Japan, March 22, 1983).

[5]  HIDEO SAITO, MASANOBU ASAGAMI, & REIJI HAYASHIYA, CHUKAI HASANHO II [AN ANNOTATED EDITION OF THE BANKRUPTCY ACT] 286-292 (1999); MAKOTO ITO, HASANHO [BANKRUPTCY LAW] 234-241 (2006); Kouichi Sakurai, *Hasan Kanzainin No Daisansha Sei [Bankruptcy Trustee's Third Party Position]*, SAIBAN JITUMU TAIKEI VI [PRACTICE ON CIVIL PROCEDURE VI] 164-181 (1985); Makoto Ito, *Hasan Kanzainin No Daisansha Sei [Bankruptcy Trustee's Third Party Position]*, 93 MINSHO 91-112 (1986).

[6]  While these orders deal with the Trustee in bankruptcy, there are no substantial differences between the Trustee in bankruptcy and the Trustee in reorganization as far as the Trustee's third party position is concerned. ITO *supra* note 5, at 237. These precedents, thus, can be used for reorganization cases.

make a false representation regarding an asset transfer. In this case, the Supreme Court of Japan ruled that the Trustee was an "innocent" third party and was not subject to a defense based on the debtor's knowledge of the fraudulent transfer. The determination of the Trustee's innocence should be based on the knowledge of the creditors, and it is generally understood that the Trustee is regarded to be innocent when there is at least one innocent creditor of the debtor.[7] Therefore, in practical terms, in almost all cases the Trustee will be found to be in the position of an "innocent" third-party.

In *In re Toyota Sho-ji,163 Jurist 234* (April 30, 1987), a debtor, who later went bankrupt, paid its sales employees commission fees under an unlawful commission agreement that violated good faith principles under the Japan Civil Code, Art. 90. The Osaka District Court ruled that the Trustee was exercising the debtor's right to recover the commission fees in the position of a legal entity independent of the debtor, and that the debtor's sales employees could not assert a defense that the pre-bankruptcy debtor was the wrongdoer. Although the employees could have asserted such a defense before the commencement of the bankruptcy proceedings because the pre-bankruptcy debtor made the payment based on illegal intent under the Japan Civil Code, Arts. 90 and 708, the court ruled that the employees could not assert such a defense against the Trustee.

Because the Trustee is in a third-party position independent of a pre-bankruptcy debtor, and his or her position is similar to the position of a creditor who levies on a debtor's assets, the Trustee can assert his or her "innocence." The Trustee is not subject to defenses based on the disloyal or improper acts of the debtor's prior management or owner, even though those defenses could have been asserted against the debtor before the reorganization. As such, in the present action, the Trustee of SS-Japan can challenge the fraudulent transfer known to and approved by the Kinoshitas. The Trustee is not subject to defenses that could

---

[7] ITO *supra* note 5, at 239.

have been asserted against pre-reorganization SS-Japan unless all of the creditors of SS-Japan are complicit in the conduct of the wrongdoers (*i.e.*, unless all creditors are not "innocent").

It should also be noted that, even outside of the bankruptcy or corporate reorganization proceedings and without the appointment of a Trustee, the defendants would not be able to assert a defense against the plaintiff's claim for the cancellation of the fraudulent transfer on the grounds that the previous management or former owner of the plaintiff knew or was complicit in the conduct of the wrongdoers, according to Japan law.[8]

### B.    SUCCESSION TO TRUSTEE'S POSITION

Under Japan law, a debtor which completes a successful reorganization succeeds to the "innocent" position of a Trustee (*i.e.*, a person whose position represents external innocent creditors who levied on the assets of SS-Japan), and the post-reorganization debtor is viewed differently from the pre-reorganization debtor.  While there is no provision under the JCRL or a court order directly addressing this conclusion, it is supported by the following analysis.

When a Trustee initiates a lawsuit relating to the debtor's assets while still in the reorganization process, that pending lawsuit will be temporarily suspended under the JCRL

---

[8]  Art. 708 of the Japan Civil Code provides a "clean hand doctrine," such that a person who has effected an act of performance for any illegal cause cannot demand the return of the subject matter of such performance.  However, according to the common interpretation of the law, this is only applied to the case in which such act is not merely illegal but violates Art. 90 of the Japan Civil Code, which deals with violations of public order and standards of decency.  Because transferring properties without a reasonably equivalent value does not violate public order or standards of decency even if it is deemed fraudulent to a creditor, the creditor whose former management or prior owner was complicit can demand the cancellation of the fraudulent transfer under Japan law.

upon the completion of the reorganization proceedings. Following such completion, the reorganized debtor shall assume the lawsuit.[9]

In Japan, the assumption of a lawsuit means the assumption of the present state of proceedings achieved by the parties before the suspension, including affirmative or negative claims and defenses.[10] Consequently, it follows logically that the reorganized debtor succeeds to the "innocent" position of the Trustee when the debtor assumes the lawsuit after the completion of reorganization.

This conclusion also brings about a fair and reasonable result for the parties. Assuming that the lawsuit was completed while the debtor was still in the reorganization process, the debtor and the defendants would be bound by the final result of the lawsuit. If the lawsuit is concluded while the reorganization proceedings are pending, the action would operate under the assumption that the Trustee should be deemed as an "innocent creditor" and the parties would be bound to the resulting conclusion of the case even after the completion of reorganization. In comparison to this situation, it would be unfair if the fact that the debtor completed its reorganization while the lawsuit was still in progress changed the underlying assumptions and legal positions, claims and defenses of the parties. It is, therefore, fair and reasonable to conclude that the parties should continue to operate under the same set of conditions as when the lawsuit is still pending, including the "innocent" status of the Trustee, even after the completion of the reorganization.

---

[9] HAJIME KANEKO, AKIRA MIKAZUKI, MORIO TAKESHITA, KOUICHI SHIMOJIMA, HITOSHI MAEDA, JYUNNOSUKE TAMURA & YOSHIMITSU AOYAMA, JOKAI KAISHA KOSEI HO I [AN ANNOTATED EDITION OF THE REORGANIZATION ACT] 602-603 (2001). It should be noted that a lawsuit initiated by the Trustee based on his or her avoidance power will be terminated at the completion of the reorganization procedures because the avoidance power is a special power granted to the Trustee by the JCRL. In this case, the lawsuit in question was not based on the Trustee's avoidance power. Since the Trustee in this case was exercising the debtor's right and not the avoidance power, the pending lawsuit will be assumed by the reorganized debtor after the completion of the reorganization proceedings.

[10] HIDEO SAITO, MASANOBU ASAGAMI, & REIJI HAYASHIYA, CHUKAI HASANHO I [AN ANNOTATED EDITION OF THE BANKRUPTCY ACT] 369 (2001).

Moreover, if the reorganized debtor did not succeed to the position of the Trustee's "innocence," the defendants in the pending lawsuit would have an incentive to tactically delay the lawsuit until the completion of the reorganization. The defendants could thereby avoid the argument that the Trustee is "innocent" and not subject to defenses based on the actions of the pre-bankruptcy management or previous owner. That, however, would provide an unfair and unreasonable result based solely on the timing of the completion of the reorganization process rather than on the merits of the claims.

As such, a debtor that completes a successful reorganization and assumes the Trustee's position in the lawsuit also assumes the "innocence" of the Trustee, and, consequently, should not be subject to the defenses based on the disloyal or improper acts of the debtor's prior management or previous owner. In the matter at hand, under Japan law, the Trustee of SS-Japan would not be subject to the defenses raised by the KG Defendants, and the reorganized debtor SS-Japan would succeed to the "innocent" position of the Trustee after the completion of the debtor's reorganization.

## IV.    "RECEIVERS" UNDER JAPAN LAW

The Kosugi Opinion concludes that: "There is no concept of 'receiver' in Japan that is identical to the 'receiver' concept in the United States." (Kosugi Opinion at 10). While it is true that there is no exact equivalent to a "receiver," in Japan, the legal term *kanzainin* can be translated into either "trustee" or "receiver." For instance, one Japanese-English dictionary, *A Glossary of Financial Terms,* translates *kanzainin* as "a receiver," while the treatise *Doing Business In Japan* translates this same term as "a trustee."[11] Moreover, the EHS Law Bulletin, which is the most comprehensive and popular English translation of Japan laws,

---

[11] MITSUNORI HASHIMOTO, EIWA KINYU YOGO JITEN [A GLOSSARY OF FINANCIAL TERMS] 528 (2000); ZENTARO KITAGAWA, DOING BUSINESS IN JAPAN, Vol 5 Section 8.03[3] (2005).

translates *kanzainin* in the JCRL as "a receiver."[12]  The court's references to "receiver" in the Order simply appear to refer to the *kanzainin* in Japan insolvency proceedings.    How *kanzainin* is translated into English does not change the analysis of this matter.

## V.    CONCLUSION

Based on my analysis of Japan law, I have concluded as follows:

- In terms of Japan choice of laws, the JCRL would not apply in this case to decide issues such as which company has standing to bring this litigation or whether SS-Japan should be deemed as "innocent creditors" under the U.S. law concerning fraudulent transfers.

- The Trustee is not subject to a defense based on the disloyal or improper acts of the debtor's pre-reorganization management or its owners, unless all of the creditors of SS-Japan are not "innocent" of wrongdoing.

- The reorganized debtor SS-Japan succeeds to the "innocent" position of the Trustee after the completion of the reorganization, provided that the Trustee brings a lawsuit against a defendant during the reorganization proceedings and the reorganization is completed while such lawsuit is pending.

- The court's use of the term "receiver" for *kanzainin* in its Order is proper and does not change the result in this case.

---

[12]  EIBUN-HOREI-SHA INC, 2350 EHS LAW BULLETIN SERIES JAPAN II 44 (2003).

9