

Alston Hunt Floyd & Ing
LAWYERS
Attorneys at Law · A Law Corporation

June 14, 2006

**VIA HAND DELIVERY**

Robert A. Marks, Esq.
Price Okamoto Himeno & Lum
707 Richards Street, Suite 728
Honolulu, HI 96813

  RE: **Notice of Pendency of Action on Pukalani Property**
     ***Sports Shinko Co. Ltd. v. QK Hotel, LLC***
     **CV 04-00124 ACK-BMK and Consolidated Cases**

Dear Mr. Marks:

This letter responds to your May 24, 2006 letter requesting that Sports Shinko (USA) Co., Ltd. and its affiliates ("SS") release the Notice of Pendency of Action ("NOPA"), recorded on February 23, 2004 on the lands owned by Pukalani Golf Club, LLC ("PGC") because your clients want to make repairs to the Pukalani Sewage Treatment Plant ("STP") owned by Pukalani STP Co., Ltd. ("STP Co."). As you sent your letter to various public agencies, we are providing courtesy copies of our response to them directly, to avoid confusion and miscommunication.

**I. INTRODUCTION**

KG's claims that SS bears the responsibility for the STP are without merit because:

1. When KG purchased the stock of the STP Co., it was aware there were problems with that facility.

2. In connection with the purchase, KG expressly agreed: (a) to buy the STP Co. Stock "*as is*" and rely *solely* on its own "due diligence," and (b) that SS made *no* representations regarding the physical or mechanical condition of the STP.

3. KG has owned and controlled the STP for over **four years**, but during that period, it did nothing to remedy the issues it complains of, and has simply let the STP and its financial condition deteriorate.

KG is falsely seeking to fabricate a "crisis" after four years of negligent management of the STP.[1] *There is no basis for KG to foist any issues regarding the STP on SS.*

American Savings Bank Tower
18th Floor
1001 Bishop Street
Honolulu, Hawai'i 96813
Phone: (808) 524-1800
Fax: (808) 524-4591

Palani Court, Suite 104
74-5620 Palani Road
Kailua-Kona, Hawai'i 96740
Phone: (808) 326-7979
Fax: (808) 326-4779

www.ahfi.com
615763_3 / 6850-5

---

[1] The STP received a conditional acceptance from the Department of Health on October 3, 2002.

**EXHIBIT C**

Robert A. Marks, Esq.
June 13, 2006
Page 2

## II.     DISCUSSION

In a March 13, 2002 letter (less than two months after the purchase of SS's properties), Mr. Tanigawa of KG claimed that deferred maintenance issues with the STP were a "major" reason for the very low price KG paid for the properties owned by the SS Companies in Hawai`i.

Specifically, Mr. Tanigawa said: (1) the STP operated at a loss of about $10,000 per month, as SS had never applied for a rate increase at the PUC since 1989; and (2) the STP was in poor condition and apparently near the end of its useful life: "repairs alone may no longer be feasible and the replacement of the [STP] facility should be done as soon as possible."[2]  Ex. "A".

KG has repeated this same "bulk purchase of the good and the bad" argument in many of its pleadings and motions in the pending lawsuits. KG has claimed, for example, that its "bulk purchase" was made for reasonably equivalent value "after netting out the liability presented by the sewage treatment plant."[3] If--as you now seem to claim--KG only discovered the problems affecting the STP *after* the purchase, its "bulk purchase" argument is a convenient fabrication.

When it purchased the STP Stock, KG expressly agreed that SS was not making any representations as to the physical or mechanical condition of the STP. *See* n.4, below. If SS wished to defraud KG, they would not have expressly put KG on notice that it needed to inspect the physical and mechanical condition of the property and equipment, *etc.* during "due diligence."

All KG's complaints of alleged omissions of "material facts" are opinions and predictions based on the *physical or mechanical condition* of the STP. KG assumed the duty under the PSA, however, to inspect the physical condition of the STP and its fixtures and equipment. Specifically:

   1.     KG bought the STP from SS "*AS IS.*" PSA § 10;

---

[2] In addition, a January 10, 2002 email from Peter Hamasaki, Mr. Tanigawa had received an October 30, 1999 Acquisition Report for the STP along with a September 21, 2001 letter from Aqua Engineers, who managed the STP. This Acquisition Report showed the dates various STPs assets were acquired and the expected life of each. The "Life" shown for all the assets in the report was seven years or less. Before it agreed to purchase the STP stock, KG *knew* STP assets would need to be replaced by this year. *See* Ex. "B."

[3] The KG Defendants' January 13, 2006 Motion for Summary Judgment in Civil No. CV 04-00128 (regarding the Mililani Golf Course transfer). *See* Mem. in Support of Mot. at 26.

Robert A. Marks, Esq.
June 13, 2006
Page 3

    2.    KG was obligated to *undertake and rely **solely** on its own "due diligence"* as to anything it regarded as important or material.[4]  PSA §§ 3.1 & 10;

    3.    KG expressly agreed that SS made **no** representations regarding the *"physical or mechanical condition"* of the properties, including the STP. PSA § 5.4;[5]

    4.    KG had free access to: (a) STP-related documents, and (b) the STP plant itself prior to closing in January, 2002. *See* PSA § 3.1. KG could also

---

[4] Section 10 of the PSA provides:

> 10.    **Condition of the Property**. Except as specifically provided in this Agreement, Seller shall not be required to do any further improvements or work on, under or about the Property, and Buyer is accepting the Property in its "AS IS" condition. Except as set forth in this Agreement, Seller expressly disclaims any and all liability for representations or warranties, express or implied, with respect to the Property or any matters related thereto contained in the Due Diligence Materials or any other documents delivered to Buyer by Seller or anyone else. Buyer acknowledges that Seller and Buyer have agreed that, except as set forth in this Agreement, Seller is making no representations or warranties, as to the accuracy of these materials and ***Buyer is to undertake and rely solely upon its own "due diligence" as to any matters of concern or importance to Buyer.***

PSA Sec. 10 (emphasis added).

[5] Section 5.4(c) of the PSA provides:

> **Buyer's Acknowledgment.** *Buyer acknowledges, accepts and agrees to* each of the following:
>
> (c) **Condition of Property**. Except for structural problems of which Seller has actual knowledge, and believes, in good faith, to be material, and which are described in Schedule 5.4(c) or in any due diligence materials provided by Seller to Buyer, *Seller makes no representation regarding the physical or mechanical condition of any portion of the Property,* including, but not limited to the roofs, exterior walls, or structural components of the Property and the heating, air conditioning, plumbing, ventilation, elevator, utility, sprinkler and other mechanical and electrical systems, apparatus and appliances located on or about the Real Property.

"Real Property" is expressly defined in the PSA to include the real property owned by STP Co. *See* Sec. 1.1(a) & 1.1(f).

have asked for any information it wanted from Aqua Engineers, who managed the STP for SS (and now manages the STP for KG).

KG impliedly contends that SS somehow magically "hid" the entire facility from inspection, or that KG could not inspect it. This is patently absurd. All KG had to do was, before it agreed to close, inspect the STP (using its 40 years of substantial experience as a contractor) or talk to Aqua Engineers, who operated the STP.[6] Despite its knowledge of problems affecting the STP, KG did nothing for years after acquiring the STP. It endured self-inflicted operating losses by not seeking a rate increase until 2005.

KG has only itself to blame for not earlier asking to PUC to allow it to: (1) recover a return on rate base for the STP; (2) recover depreciation; and (3) pass through costs of construction to customers and address capital expenditures.[7]

Your glib reference to the wastewater issues at the Ala Wai Canal in your letter is, one sincerely hopes, completely irrelevant to the issues here. Obviously, SS does not wish any spills to occur on Maui, but SS's ownership of the STP ended well over four years ago. Your intimation that potential illegal sewage discharges could occur on Maui so long after KG took ownership of the STP is disturbing and improper. It only further begs the question of whether KG has properly managed the STP.

### A. The STP should not encumber the Pukalani Golf Club; it must fail on its own, or stand with KG's ample resources behind it.

KG's letter to SS requests that SS release its NOPA to encumber the Pukalani Country Club to finance work on the STP. KG seeks to have SS acquiesce to financing for KG's benefit by encumbering property that SS is seeking to recover in its federal lawsuits. This is improper.

KG has chosen to wed the Pukalani Golf Club, LLC ("PGC") to the STP through ownership of the STP Co. stock. Prior to the January 25, 2002 transfers of SS's properties to KG, the STP Co. stock was owned by Sports Shinko (Hawaii) Co., Ltd., which did not own the Pukalani Country Club and the golf course. The golf course

---

[6] KG retained Aqua Engineers to run the STP. As part of the January 15, 2002 transfers of SS's properties to the KG entities, KG also retained Mr. Yasuo Nishida, the former Assistant Secretary to the STP Co., the Administrative Manager for the STP, a resident of Maui, and one of the most knowledgeable people about the STP's issues. It is impossible to believe Mr. Nishida or Aqua Engineers would have hid material facts from or lied to their future employer/client, KG, prior to closing.

[7] *See* STP Co. March. 1, 2005 Application at Par. 7.

Robert A. Marks, Esq.
June 13, 2006
Page 5

and the STP were largely independent, apart from the contract for the purchase of treated effluent and some operational advances.

KG has apparently already been providing funds to the STP through the properties it purchased from SS. Specifically, although the STP represented to the PUC that there were no promissory notes or evidence of debt related to the STP, the financials submitted with the STP's March 1, 2005 application for rate increase show an amount of $504,591.77 due to "PGC LLC."[8] KG has substantial other assets and should not be burdening the assets wrongly taken from SS to address the problems with the STP.

In short, we can see no reason to subject the golf course and development property to the obligations of the STP Co., which is a separate company that should stand or fail on its own. KG created the present relationship between PGC and the STP Co. There is no reason that SS should release its NOPA and subject the PCC property to the obligations of a separate company simply because KG made the choice to create a relationship between the two.

    **B.**    **Release of NOPA on the Pukalani Golf Property related to Refinancing for Recent Fire Damage to the PCC.**

To the extent your letter implies that SS is willing unconditionally to release the NOPA, it is wrong. SS is willing to subordinate its NOPA for the limited purpose of financing for reconstruction only after SS reviews and approves the following:

    1.    A reconstruction plan;

    2.    Cost estimates and a budget for reconstruction;

    3.    Our review and approval of a letter of intent from the financing bank;

    4.    Our review and approval of the form of mortgage and/or other documents/encumbrances to be recorded on the property;

    5.    Other materials we need to establish that the plans and costs are reasonable and appropriate; and

    6.    Documentation that will require KG to (a) pursue all claims for, and utilize insurance proceeds towards the reconstruction and repair of the fire damage at Pukalani prior to encumbering the property with any financing, or in the alternative, (b) use all insurance proceeds KG receives after any reconstruction loan to repay that loan.

---

    [8] *See* March 1, 2005 STP Application re rate increase, Dkt. No. 05-0025, Ex. PSTP 2, Sched. 7, p. 1 line 2120, and Ex. PSTP 2 Sched. 5.

615763_3 / 6850-5

Robert A. Marks, Esq.
June 13, 2006
Page 6

### III.  CONCLUSION

In January, 2005, you sought to "rescind" the transfer of the STP stock under the Hawaii Securities Act (HRS § 485-25). Your demand was frivolous and contrary to law.[9] You recently have filed motions in federal court without supporting legal authority.

Your letter continues a pattern of spurious claims and arguments. Your statement that SS is somehow "preventing" Pukalani STP from providing the facilities with the funds necessary to ensure service is frivolous.[10] KG has ample assets which it can use to upgrade the STP and, as you state, KG has the responsibility as the owner of the STP to prevent harm to the community.

Very truly yours,

[signature]

PAUL ALSTON
GLENN T. MELCHINGER
PA:GTM/cyyc

Enclosures

cc:  Client
     Kent Morihara, Esq.
     Hawaii Public Utilities Commission
     Division of Consumer Advocacy
     Department of Health, Maui District Office, Wastewater Branch

---

[9] Your 2005 demand did not even satisfy the basic elements of a securities claim, and also contradicted the position you took in the federal court litigation--that SS should not be able to "cherry pick" and rescind only *certain* transfers under the PSA, and that the STP Co. stock sale was part of a single "bulk transfer."

[10] There is no NOPA on the STP property.

615763_3 / 6850-5

KG HOLDINGS, LLC
c/o Ocean Resort Hotel
175 Paoakalani Avenue, Ste. 300
Honolulu, HI 96815
March 13, 2002

Mr. Frank Mukai
McCorriston Miller Mukai MacKinnon llp
500 Ala Moana Boulevard
Honolulu, HI 96813

Dear Frank:

During our recent telephone conversation, you requested that we consider purchasing the promissory notes the KG Holdings (KG) entities gave to Sports Shinko or providing security for the notes. You further indicated that you believed that we should consider the request favorably because we were able to acquire Sports Shinko's properties at a very good price.

My response to you in regards to your comment of a "very good price" is that this is the typical view of an uninformed individual. Typically, the uninformed looks at pieces of the bulk purchase and make this type of comment without knowing the details of the transaction. The bulk purchase involved acquisition of all assets including properties that we would consider less than desirable.

It is because of our commitment to a bulk purchase that we continue to pursue the completion of the Queen Kapiolani Hotel (QK) purchase. As noted in a previous letter, QK is plagued with deferred maintenance and building code problems, the economic extent of which is still unknown. These problems exist in a hotel that has a negative bottom line and a ground lease that is up for renegotiations in 2004. The renegotiated ground lease jumped from $77,400 a year to $806,760 in the last renegotiations in 1994. Third party financing of the purchase and the remediation necessary to correct the current building problems is very difficult if not impossible given the current cash flow and the status of the ground lease.

Another major problem dealing with deferred maintenance is the Sewage Treatment Plant (STP) at Pukalani. Sports Shinko was advised as early as 1998 that the plant was nearing the end of its useful life and that replacement of the plant should be considered. Also, the STP is operating at a monthly loss of at least $10,000 per month. This is directly attributable to the failure of Sport Shinko to apply for rate increases that would at least enable the STP to operate at a break even point. The situation at the STP appears to require immediate attention and the early estimate to build a new facility is about $1.5 million. The operator of the plant indicated that repairs alone may no longer be feasible and the replacement of the facility should be done as soon as possible.

REDACTED

006 0397 R

EXHIBIT A

The manager of the Mililani Golf course has also advised us that a major overhaul of the irrigation system should be considered to maintain the quality of the course. This is partly due to the decrease in the amount of water allocated to the course (reduction from 400,000 gal. per day to 200,000 gal. per day) and partly due to a deferred maintenance problem. The cost for this work was estimated to be between $1 million and $1.5 million.

Besides the major issues noted above, the properties in general have all suffered because of the deferred maintenance policy of Sports Shinko. Most of the problems have been surfacing subsequent to the purchase and the overall economic impact is still being determined. It appears certain that a substantial amount of additional funds will be required to remedy the problems encountered.

**REDACTED**

We are currently working with an architect and engineers to properly evaluate the economic impact of the various problems noted above. For this reason, we are not currently able to commit to the purchase of the Sport Shinko notes but may be able to make such a commitment if we are given a reasonable amount of time to evaluate our overall financial needs.

On the issue of providing collateral for the Sport Shinko notes, we again point out to you that the final decision is with Bank of Hawaii. Our loan agreement with the Bank prohibits us from placing mortgages on the properties without their approval. Given the current circumstances including the fact that the transaction has not been completed, we don't believe that the bank would approve of any additional mortgage positions. Also, the bank will not likely agree to allowing for a second mortgage at least until we are able to identify the amount of additional funds required to address the above noted problems.

Despite the difficulties in providing security for the Sport Shinko notes, we feel that we should be able to form an investment entity to purchase the notes within six months of finalizing the QK purchase. While this is short of a firm commitment, we would be willing to discuss a more formal agreement if a faster payoff of the notes at a discounted price is desired. Please call me if there is a need for further discussions.

Sincerely,

*Wayne Tanigawa*

Wayne Tanigawa,
Manager

| | |
|---|---|
| From: | Peter Hamasaki |
| To: | Tanigawa, Wayne |
| Date: | 1/10/02 9:00PM |
| Subject: | SS - Pukalani STP |

Documents re: Pukalani STP

Peter J. Hamasaki
McCorriston Miller Mukai MacKinnon LLP
P.O. Box 2800
Honolulu, Hawaii 96803-2800
Tel: (808) 529-7300
Fax: (808) 524-8293/(808) 535-8030
e-mail: hamasaki@m4law.com

*********************************************************************
This message is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of
this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail or telephone, and return the original message. THANK YOU.
*********************************************************************

CC:        Hee, Stacey;  Shimazu, Asako;  Tanaka, Tod Z.;  Tanaka, Tracy D.



EXHIBIT B                                                                                                   020 0419

STP

SEP 12 2001 5:03PM   AQUA ENGINEERS INC        808 332 7596           p.1

 AQUA ENGINEERS

P.O. Box 368
Lawai, Hawai'i 96765
Tel (808) 332-7381
Fax (808) 332-7596
Neighbor Islands call
1 (800) 430-7381

September 12, 2001

Mr. Satoshi Kinoshita
Executive Vice President
Sports Shinko Hawaii Co., Ltd.
175 Paoakalani Ave. #300
Honolulu, HI 96815

Hugh A. Strom
General Manager
Aqua Engineers, Inc.
P.O. Box 368
Lawai, HI 96765

Re: Pukalani Country Club Wastewater Treatment Plant

Mr. Kinoshita

In response to questions you posed in your fax transmittal dated September 12, 2001 I am pleased to provide you with the following responses.

The Pukalani Country Club Wastewater Treatment Plant current phase is designed to treat an average daily flow of .5 MGD (500,000 gallons per day) with design expansion to ultimately treat 1.0 MGD (1,000,000 gallons per day) of raw sewage. The daily average flow over the past year has been .205 MGD (205,000 gallons per day). Excess treatment capacity of .295 MGD (295,000 gallons per day) is currently available to handle future development. No expansion should be required at this time for the sale of the property.

Pukalani Country Club Wastewater Treatment Plant is classified as an R-2 wastewater facility by the State of Hawaii Department of Health and meets all effluent reuse guidelines criteria. There are currently no requirements by the State DOH to upgrade the treatment plant to achieve a higher quality effluent. No cost in this area should be anticipated towards the sale of this property.

The PUC will need to be involved in approving the transferring of the certificate and may require the buyer/owner to establish a cash reserve for the purpose of responding to unexpected repairs or equipment replacements. The PUC will not normally make any upgrade requirements to transfer ownership of the wastewater treatment plant. Most

020 0420

facility upgrades are usually imposed by the DOH due to violations or treatment capacity expansion needs in servicing the surrounding development.

An Industrial Discharge Permit not required nor issued for the Pukalani Country Club Wastewater Treatment Plant. This permit is required of the facility if the facility has been determined to meet the following criteria:

1. The facility has a National Pollutant Discharge Elimination System (NPDES) Permit required by EPA;

2. The facility is required to have an EPA Approved Pretreatment Program.

Industrial discharge permit is required to protect the State Waters from contamination by industrial pollutants. This permit would insure that the facility has followed all protocol in identifying significant industrial users (SIU's), monitored and gathered data on discharges, required them to fall into a program with the facility where discharges are monitored for flow, levels of contaminants, etc. This program would also include necessary pretreatment device installation.

I have asked Ian Kagimoto to respond to you directly concerning your questions with the Kiahuna Golf Course development. Mr. Kagimoto is the principal owner of the Poipu Water Reclamation Facility and will be able to answer your questions directly on that matter.

If you have any further questions please do not hesitate to contact me directly at our Kauai office (808) 332-7381 or on my cell (808) 651-0057.

Hugh A. Strom
General Manger
Aqua Engineers, Inc.

020 0421

```
Date: 11/10/00                                                                                                    Page: 1
                                              Pukalani STP Co., Ltd.
                                          A C Q U I S I T I O N   R E P O R T
                                                  For: Financial Book
                                         From January 1, 1999 to December 31, 2000

Select: All    Sub-Total By: GL Asset Account
Asset ID   Description                Serial No.    Acquired   Method Life      Cost          Accum. Depr.     As of    Disposed

    30  R/R IMPELLER                                01/05/99   SLM   7.0        3,296.97            940.99   10/31/00
    31  STP - REBUILD AERATION BL                   01/05/99   SLM   7.0        5,823.84          1,727.61   10/31/00
    32  MAGNETROL                                   01/05/99   SLM   7.0        2,326.16            735.09   10/31/00
    36  CALIBRATION METER                           01/01/99   SLM   7.0          645.18            301.91   10/31/00
    41  HEADERS AND DIFFUSERS                       05/18/99   SLM   5.0        9,912.21          2,475.05   10/31/00
                                                                              ----------------  ----------------
Sub Totals For 1530-00                                                          21,693.36          6,076.64
Assets: 5

    35  DIESEL TANK DOWNPYMT                        01/01/99   SLM   7.0       15,800.00          4,944.04   10/31/00
    42  PITT ENGINEERING/TANK                       08/01/99   SLM   7.0        1,336.13            173.92   10/31/00
                                                                              ----------------  ----------------
Sub Totals For 1540-00                                                          17,136.13          5,117.96
Assets: 2

    37  DIESEL GAS TANKS                            01/01/99   SLM   7.0        4,010.39          1,254.86   10/31/00
    43  AMERON                                      10/01/99   SLM   5.0          615.61            112.86   10/31/00
                                                                              ----------------  ----------------
Sub Totals For 1560-00                                                           4,626.00          1,367.72
Assets: 2

    29  PRINTER                                     01/05/99   SLM   7.0          423.03             89.57   10/31/00
    33  COMPUTER SET UP                             01/05/99   SLM   5.0           78.00             33.28   10/31/00
    34  COMPUTER - COMPAQ                           01/01/99   SLM   5.0        1,039.39            436.15   10/31/00
                                                                              ----------------  ----------------
Sub Totals For 1580-00                                                           1,540.42            559.00
Assets: 3

    25  SOFTWARE UPGRADE                            01/05/99   SLM   5.0        6,739.20          2,471.04   10/31/00
                                                                              ----------------  ----------------
Sub Totals For 1590-00                                                           6,739.20          2,471.04
Assets: 1


                                                                              ----------------  ----------------
Grand Totals        Assets: 13                                                  51,697.10         15,583.36
=========================================================================================================================
```

STP

020 0422