MARTIN J. FOLEY (State Bar No. 64083)
HENRY S. ZANGWILL (State Bar No. 46203)
AZNIV KSACHIKYAN (State Bar No. 204479)
SONNENSCHEIN NATH & ROSENTHAL
601 South Figueroa Street, Suite 1500
Los Angeles, California 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

BY FAX

| | |
|---|---|
| Sports Shinko (U.S.A.) Co., Ltd., a Delaware corporation and LC Hotel and Spa Corporation, a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Ronald W. Thompson, Toshio Kinoshita, Takeshi Kinoshita, and La Costa Company, LP, a Delaware limited partnership, and Does 1-100, inclusive<br><br>Defendants. | No.  809347<br><br>COMPLAINT FOR (1) BREACH OF FIDUCIARY DUTY, (2) CONSPIRACY TO BREACH OF FIDUCIARY DUTIES, AND (3) INTENTIONAL CONCEALMENT, (4) CONSTRUCTIVE FRAUD (5) CONSPIRACY TO DEFRAUD AND (6) NEGLIGENT MANAGEMENT |

Plaintiffs, Sports Shinko (U.S.A.) Co., Ltd., a Delaware corporation and LC Hotel and Spa Corporation, a California corporation, for causes of action against Defendants allege as follows:

**PARTIES**

1.  Plaintiff, Sports Shinko U.S.A. Co., Ltd. ("Sports Shinko") is a corporation organized and existing under and by virtue of the laws of the state of California with its principal place of business located in San Diego County, California.

---

COMPLAINT FOR (1) BREACH OF FIDUCIARY DUTY, (2) CONSPIRACY TO INDUCE BREACH OF FIDUCIARY DUTIES, (3) BREACH OF CONTRACT, AND (4) NEGLIGENT MANAGEMENT

EXHIBIT 13

2. Plaintiff LC Hotel & Spa Corporation ("La Costa Corp."), formerly known as La Costa Hotel and Spa Corporation is a corporation organized and existing under and by virtue of the laws of the state of California with its principal place of business in San Diego County, California, and at all times herein mentioned was a wholly-owned subsidiary of Sports Shinko.

3. Defendant Ronald W. Thompson ("Thompson") is an individual residing in the state of Maryland, and was, at all times relevant hereto, the President and Chief Executive Officer of Capital Hotel Group, Inc., ("CHG") and controlled the acts and activities of that corporation, as well as the President, and the individual who controlled the acts and activities, of Takron, Inc., which was the general partner of Defendant La Costa Company LP.

4. Defendant, Toshio Kinoshita is an individual residing in Japan, and at all times relevant hereto was a Director and the Chairman of Sports Shinko, a Director and Chairman of La Costa Corp., a Director and President of Encinitas Resort Corporation, and a Director and President of La Costa (TDMK) Co. Ltd.

5. Defendant, Takeshi Kinoshita is an individual residing in Marin County, California, and at all time relevant hereto was a Director and Executive Vice President of Sports Shinko, a Director and President of La Costa Corp., a Director and the Chairman of La Costa (TDMK) Co. Ltd., a Director and Vice President of Encinitas Resort Corporation and a Director and Chairman of Takron, Inc.

6. Defendant La Costa Company LP was a Delaware limited partnership which was, at all times relevant hereto, effectively owned and controlled by Thompson, Toshio Kinoshita and Takeshi Kinoshita.

7. Plaintiffs are informed and believe, and on that basis allege, that at all relevant times each of the Defendants was the agent, servant and employee of each of their co-defendants and were, at all times acting within the purpose and scope of such agency, and each defendant has ratified and approved the acts of his or its agent.

-2-

8. Plaintiff is ignorant of the true names and capacities of defendants named herein as Does 1-100, inclusive, and will seek leave of court to amend this complaint to set forth their true names and capacities when the same have been ascertained.

## FACTS

9. The La Costa Hotel and Spa ("La Costa Resort") was, prior to the acts and events complained of herein, a world class resort and spa located in Carlsbad, California. The La Costa Resort enjoyed a world-wide reputation for its superior accommodations, service, cuisine, grounds, spa facilities, as well as world-renowned golf and tennis facilities.

10. On or about October 30, 1987, La Costa Corp., for and on behalf and for the benefit of its parent and sole shareholder, Sports Shinko, purchased La Costa Resort from its former owners for a price of approximately $260,000,000.

11. The purchase of La Costa Resort by Plaintiffs was financed, in part, by a loan obtained from Fuji Bank. The loan agreement between Fuji Bank and Plaintiffs (the "Fuji Bank Loan Agreement") provided, *inter alia*, that the management agreement relating to the operation of the La Costa Resort could not be materially supplemented, modified, amended, terminated, transferred or assigned without the prior written consent of Fuji Bank and that the prior written consent of Fuji Bank would be required as to any replacement property manager and any replacement management agreement.

12. In or about October 1989, in Carlsbad, California, Sports Shinko entered into a management relationship and contract with CHG for the management of the La Costa Resort. In his capacity as President and CEO of CHG, and as the individual primarily responsible for the management of the La Costa Resort, Thompson was aware of the material terms and conditions of the Fuji Bank Loan Agreement including, without limitation, the requirement that the prior written consent of Fuji Bank be obtained prior to any change, transfer or assignment of the management agreement or property manager for the La Costa Resort.

13. On or about April 19, 1999, Toshio Kinoshita and Takeshi Kinoshita caused Sports Shinko to terminate its existing management contract with CHG and to enter into a new

-3-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

management agreement with La Costa Company, LP and to have La Costa Company, LP replace CHG as property manager for the La Costa Resort. The terms and conditions of the management agreement entered into between Sports Shinko and La Costa Company, LP were commercially unreasonable in that, *inter alia*, the 20-year term of the agreement was excessive and commercially unreasonable, the agreement was not terminable at will or upon any specified termination fee, and the duties and obligations required to be rendered under the agreement were not specified in a commercially reasonable and customary manner for contracts involving properties of the scope, size and nature of the La Costa Resort. The management contract between Sports Shinko and La Costa Company LP was negotiated and executed by Takeshi Kinoshita on behalf of Sports Shinko and La Costa Corp. At no time was the consent of Fuji Bank ever requested or obtained by Sports Shinko or by La Costa Company, LP for the change of property managers or the new management agreement.

14. On or about December 8, 1999, at Carlsbad, California, the management agreement between La Costa Company LP and Sports Shinko alleged above was assigned by La Costa Company, LP to Scawfell La Costa Company ("Scawfell"), a Delaware corporation solely owned and controlled by Thompson. This assignment of the property management agreement was approved on behalf of Sports Shinko and La Costa Corp. by Takeshi Kinoshita. Thompson was charged with the principal responsibility for performing the management obligations of Scawfell under the agreement. At no time was the consent of Fuji Bank ever requested or obtained to the change of management responsibility to Scawfell or the assignment of the management agreement to Scawfell.

15. Plaintiffs are informed and believe, and thereon allege, that at all times material hereto Thompson controlled Scawfell and operated Scawfell to divert profits for his own personal use and that Scawfell was merely the alter ego of Thompson.

16. At the time that the La Costa Resort management agreement between La Costa Company LP and Sports Shinko was entered into, Defendants, and each of them, were aware (1) of the provisions of the Fuji Bank Loan Agreement, (2) that the consent of Fuji Bank was

-4-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

never sought nor obtained to the La Costa Company, LP management agreement, and (3) that the La Costa Company, LP management agreement violated the terms of the Fuji Bank Loan Agreement and was therefore void or voidable.

17. At the time that La Costa Company LP purported to assign the La Costa Resort management agreement to Scawfell, Defendants, and each of them, were aware (1) that the consent of Fuji Bank to the Scawfell assignment was never sought or obtained, and (2) that the purported assignment to Scawfell violated the terms of the Fuji Bank Loan Agreement and was therefore void or voidable.

18. In or about 1998, La Costa Corp. assigned to Encinitas Resort Corporation, its intellectual property rights associated with the La Costa Resort, including without limitation, its trademarks, service marks, trade names, and copyrights. At the time of the transfer, Encinitas Resort Corporation was a wholly-owned subsidiary of Sports Shinko and an affiliated sister corporation of the La Costa Corp. The purpose of that transfer was to permit Encinitas Resort Corporation to hold, use and exploit the La Costa Resort intellectual property rights for the sole benefit of Sports Shinko and La Costa Corp.

19. On or about September 8, 1999, Encinitas Resort Corporation transferred the intellectual property rights associated with the La Costa Resort to La Costa (TDMK) Co., Inc., a wholly-owned subsidiary of Sports Shinko and an affiliated sister corporation of La Costa Corp. The purpose of the transfer was to permit La Costa (TDMK) Co., Inc. hold, use and exploit the La Costa Resort intellectual property rights for the sole benefit of Sport Shinko and La Costa Corp.

20. In or about November 12, 1999, Defendants Toshio Kinoshita and Takeshi Kinoshita improperly caused La Costa (TDMK) Co., Inc. to transfer the intellectual property rights associated with the La Costa Resort to Defendant La Costa Company LP. The agreement facilitating that transfer provided for the payment of consideration which was inadequate and commercially unreasonable, and indeed none of the consideration recited in the

-5-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

agreement was ever paid, and La Costa (TDMK) Co., Inc., Sports Shinko and La Costa Corp. received no consideration for said transfer.

21. In or about May or June 2000, Fuji Bank notified Plaintiffs that it objected to and refused to consent to the change in the property manager from CHG and the change of the management agreement to a new entity. This objection by Fuji Bank was known by Defendants and each of them in or about June 2000.

22. In or about 2000, Thompson, at the direction of Defendants Toshio Kinoshita and Takeshi Kinoshita, began marketing the La Costa Resort for sale. In connection with his efforts to sell the property, Thompson, with the full knowledge and consent of Toshio Kinoshita and Takeshi Kinoshita, told prospective purchasers that any purchase of the property would have to include a payment to Thompson of a purported "cancellation fee" of $10,000,000 to cancel the management agreement between Scawfell and Sports Shinko. This $10,000,000 demand by Thompson was made with the full knowledge and consent of Toshio Kinoshita and Takeshi Kinoshita, and with the full knowledge of all Defendants that the Scawfell management agreement was in violation of the Fuji Bank Loan Agreement and therefor void or voidable.

23. On or about November 15, 2001, the La Costa Resort was sold by Plaintiffs to KSL La Costa Resort Corporation ("KSL"). The terms of the sale agreement were negotiated and approved by Toshio Kinoshita and Takeshi Kinoshita, for and on behalf Plaintiffs.

24. Under the terms of the sale agreement for the La Costa Resort to KSL, although the purchase price agreed to be paid by KSL was $120,000,000, Plaintiffs, in fact, received consideration of only $110,000,000 since the transaction included a disguised payment of the "cancellation fee" of $10,000,000 improperly demanded by Thompson. Moreover, the cash received by Plaintiffs was reduced by a $7,000,000 "Liability Escrow" arising from liabilities and obligations created by Defendants during the time they managed, operated and supervised the La Costa Resort and the Plaintiff corporations.

-6-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

25. On or about January 28, 2002, Sports Shinko Co., Ltd., the parent corporation of Sports Shinko and La Costa Corp., was placed into a reorganization proceeding in Japan by the Resolution Collection Corporation, acting for the benefit of the creditors of Sports Shinko Co., Ltd. and its subsidiaries. An interim trustee was appointed on February 4, 2002, following which Toshio Kinoshita, Takeshi Kinoshita and other senior management were removed as officers of Sports Shinko Co., Ltd. and its subsidiaries, including Plaintiffs. On May 31, 2002, the Bankruptcy Court of Osaka, Japan appointed a trustee for Sports Shinko Co., Ltd.. It was only after the trustee assumed control of Plaintiffs, that Plaintiffs first discovered the acts and omissions of Defendants alleged herein. Those acts and omissions were willfully concealed by Defendants from Plaintiffs, and in the exercise of reasonable care Plaintiffs did not and could not have discovered these facts prior to that time.

## FIRST CAUSE OF ACTION

(For Breach Of Fiduciary Duty Against Defendants Toshio Kinoshita,

Takeshi Kinoshita, La Costa Company, LP and Does 1-100, Inclusive)

26. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in Paragraphs 1-25, above.

27. As officers and directors of Sports Shinko and La Costa Corp., Defendants Toshio Kinoshita and Takeshi Kinoshita owed to said corporations a fiduciary duty.

28. La Costa Corp. LC as property manager for the La Costa Resort, owed to Plaintiffs a fiduciary duty in connection with the performance of its duties and obligations as property manager.

29. Defendants Toshio Kinoshita and Takeshi Kinoshita breached their fiduciary duty to Plaintiffs by doing the things and performing the acts hereinbefore alleged and, *inter alia* (1) causing the La Costa Resort to be sold on commercially unreasonable terms, (2) causing the transfer of the intellectual property rights relating to the La Costa Resort for inadequate consideration, (3) causing Sports Shinko to enter into management agreements with La Costa Company LP and Scawfell on terms that were commercially unreasonable and

-7-

oppressive, (4) continuing to utilize the services of Thompson and corporations controlled by him to manage the La Costa Resort even though Thompson and his controlled corporations demonstrated an inability to effectively or profitably manage the La Costa Resort or to enhance the value of the La Costa Resort, (5) causing a disguised cancellation fee of $10,000,000 to be paid to Thompson in connection with the sale of the La Costa Resort to KSL, (6) improperly booking income and expenses from golf course operations, (7) wrongfully inflating personnel costs, (8) failing to implement appropriate management control systems and reserves, including reserves for furniture, fixtures, and equipment, (9) wrongfully issuing "scrip" redeemable for goods and services at the La Costa Resort without receiving adequate consideration therefor and without maintaining adequate records and controls with respect to the nature and amount of the scrip issued, (10) operating the business in a manner which facilitated the improper transfer of corporate funds and assets to themselves and to entities owned and controlled by them, (11) engaging in self-dealing transactions on terms which were neither fair nor reasonable to Plaintiffs, (12) wasting corporate assets, and (13) usurpation of corporate opportunities, including without limitation, depriving Sports Shinko from the opportunity to effectively exploit the La Costa Resort trademarks and other intellectual property rights.

30. Defendant La Costa Company, LP breached it fiduciary duty to Plaintiffs by doing the things and performing the acts hereinbefore alleged and, *inter alia* (1) knowingly entering into a management agreement with Sports Shinko without first obtaining the consent of Fuji Bank, (2) managing the affairs and operations of the La Costa Resort in a manner which was neither effective nor profitable and in a manner that caused a decline in the value of the La Costa Resort, (3) improperly booking income and expenses from golf course operations, (4) wrongfully inflating personnel costs, (5) failing to implement appropriate management control systems and reserves, including reserves for furniture, fixtures, and equipment, (6) wrongfully issuing "scrip" redeemable for goods and services at the La Costa Resort without receiving adequate consideration therefor and without maintaining adequate

-8-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

records and controls with respect to the nature and amount of the scrip issued, (7) causing and facilitating the improper transfer of corporate funds and assets to itself and Thompson and to entities owned and controlled by Thompson, (8) engaging in self-dealing transactions on terms which were neither fair nor reasonable to Plaintiffs, and (9) wasting the corporate assets of Sports Shinko and La Costa Corp.

31. The acts and conduct of Defendants hereinabove alleged were done for their own personal financial advantage and benefit.

32. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

33. The breaches of fiduciary duty by Defendants described herein were fraudulent, malicious and oppressive, and constitute despicable conduct done with a conscious disregard for Plaintiffs' rights and their fiduciary duties to plaintiffs. As a result, plaintiffs are entitled to an award of punitive and exemplary damages in an amount appropriate to punish Defendants.

## SECOND CAUSE OF ACTION

(For Conspiracy to Breach Fiduciary Duties Against All Defendants)

34. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in paragraphs 1-33 above.

35. Defendants, and each of them, knowingly and willfully conspired together and agreed among themselves to do the things hereinbefore alleged.

36. Defendants did the acts alleged above in furtherance of the aforementioned conspiracy, and for their own personal financial advantage and benefit.

37. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

38. The acts and conduct by Defendants described herein were fraudulent, malicious and oppressive, and constitute despicable conduct done with a conscious disregard for Plaintiffs' rights. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages in an amount appropriate to punish Defendants.

### THIRD CAUSE OF ACTION

(For Intentional Concealment Against All Defendants)

39. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in paragraphs 1-38 above.

40. Defendants, and each of them, at all times relevant hereto, had full knowledge of the facts alleged above, and were under a duty and obligation to fully disclose said facts to Plaintiffs.

41. Defendants, and each of them, willfully and intentionally suppressed and concealed from Plaintiffs the true facts concerning the acts and omissions hereinbefore alleged.

42. The suppression and concealment of facts by Defendants was done with the intent to defraud and deceive Plaintiffs and to cause Plaintiffs to alter and change their positions to their injury and detriment.

43. As a direct and proximate result of the foregoing, Plaintiffs was induced by Defendants' concealment and suppression to act to Plaintiffs' prejudice by doing the things heretofore alleged.

44. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

The acts and conduct by Defendants described herein were fraudulent, malicious and oppressive, and constitute despicable conduct done with a conscious disregard for Plaintiffs'

-10-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

rights. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages in an amount appropriate to punish Defendants.

### FOURTH CAUSE OF ACTION

(For Constructive Fraud Against All Defendants)

45. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in paragraphs 1-38, 40 and 41 above.

46. Defendants, and each of them did the acts and omissions alleged above for the purpose of their own financial gain and advantage and for the financial gain and advantage of their co-defendants.

47. As a direct and proximate result of the foregoing, Plaintiffs were induced to act to their prejudice by doing the things hereinbefore alleged.

48. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

49. The acts and conduct by Defendants described herein were fraudulent, malicious and oppressive, and constitute despicable conduct done with a conscious disregard for Plaintiffs' rights. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages in an amount appropriate to punish Defendants.

### FIFTH CAUSE OF ACTION

(For Conspiracy to Defraud Against All Defendants)

50. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in paragraphs 1-49 above.

51. Defendants, and each of them, knowingly and willfully conspired together and agreed among themselves to do the things hereinbefore alleged and to conceal and suppress the true facts from Plaintiffs, and to cause Plaintiffs to act to their prejudice as hereinbefore alleged.

-11-

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

52. Defendants did the acts alleged above in furtherance of the aforementioned conspiracy, and for their own personal financial advantage and benefit.

53. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

54. The acts and conduct by Defendants described herein were fraudulent, malicious and oppressive, and constitute despicable conduct done with a conscious disregard for Plaintiffs' rights. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages in an amount appropriate to punish Defendants.

## SIXTH CAUSE OF ACTION

(For Negligent Management Against Toshio Kinoshita,

Takeshi Kinoshita, and Does 1-50, Inclusive)

55. Plaintiff realleges and incorporates herein by this reference the allegations set forth in paragraphs 1-37 above.

56. Defendants Toshio Kinoshita and Takeshi Kinoshita, as officers of Sports Shinko and La Costa Corp., negligently managed, administered, controlled and supervised the affairs of Sports Shinko and La Costa Corp., and failed to use due and reasonable care in the use and preservation of the assets and property of Plaintiffs, so as to cause a waste of its assets and the sustaining of unnecessary losses and liabilities.

57. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

## SEVENTH CAUSE OF ACTION

(For Negligent Management Against Ronald W. Thompson and Does 51-100, Inclusive)

58. Plaintiffs reallege and incorporate herein by this reference the allegations set forth in paragraphs 1-37 above.

59. Thompson was the individual primarily responsible for carrying out, implementing and discharging the property management responsibilities of CHG, La Costa Company LP and Scawfell under their respective management agreements with Plaintiffs. In that capacity, he owed a duty to Plaintiffs to exercise due and reasonable care in supervising, managing and directing the affairs and operations of La Costa Resort.

60. Thompson breached that duty in that he negligently managed, administered, controlled and supervised the affairs and operations of the La Costa Resort, and failed to use due and reasonable care in supervising, managing and directing the operations of the La Costa Resort in accordance with prudent and reasonable management policies and practices, which caused a decline in the reputation and good will of the La Costa Resort, a decline in the market value of the resort and its assets, so that by the time it was ultimately sold to KSL the value had declined to less than half of what it was when it was initially acquired by Sports Shinko, the deterioration in the physical facilities and services of the La Costa Resort, failed to maximize the occupancy of the La Costa Resort and to keep it competitive with other competing resorts in the same geographic area, incurred unnecessary expenses and obligations which negatively impacted upon the revenues available to Plaintiffs, and failed to effectively, efficiently and profitability manage the La Costa Resort.

61. As a direct and approximate result of the foregoing, Plaintiffs have been damaged in an amount in excess of $10,000,000.00, plus interest thereon according to proof. Plaintiffs will seek leave of Court to allege the full amount of their damages when the same have been ascertained.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

1.  1. On the First Cause of Action,
2.     a. For general damages in an amount to be proven at trial;
3.     b. For an award of punitive and exemplary damages;
4.  2. On the Second Cause of Action,
5.     a. For general damages in an amount to be proven at trial;
6.     b. For an award of punitive and exemplary damages;
7.  3. On the Third Cause of Action,
8.     a. For general damages in an amount to be proven at trial;
9.     b. For an award of punitive and exemplary damages;
10. 4. On the Fourth Cause of Action,
11.    a. For general damages in an amount to be proven at trial;
12.    b. For an award of punitive and exemplary damages;
13. 5. On the Fifth Cause of Action,
14.    a. For general damages in an amount to be proven at trial;
15.    b. For an award of punitive and exemplary damages;
16. 6. On the Sixth Cause of Action, for general damages in an amount to be proven at trial;
17. 
18. 7. On the Seventh Cause of Action, for general damages in an amount to be proven at trial;
19. 
20. 8. For interest, according to proof,
21. 9. For Plaintiff's cost of suit herein; and
22. 10. For such other relief which the Court may deem just and proper.

Dated: April 18, 2003

SONNENSCHEIN NATH & ROSENTHAL
MARTIN J. FOLEY
HENRY S. ZANGWILL
AZNIV KSACHIKYAN

By _____Martin Foley_____
MARTIN J. FOLEY
Attorneys for Plaintiffs

30157433v6

SONNENSCHEIN NATH & ROSENTHAL
601 SOUTH FIGUEROA STREET, SUITE 1500
LOS ANGELES, CALIFORNIA 90017
(213) 623-9300

Complaint for (1) Breach of Fiduciary Duty, (2) Conspiracy to Induce Breach of Fiduciary Duties, (3) Breach of Contract, and (4) Negligent Management

DATE: 10/31/06
Attest: A true copy,
Clerk of the Superior Court
By _____D. Johnson_____ Deputy
  D. Johnson

**982.2(b)(1)**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
MARTIN J. FOLEY (SBN 64083)
HENRY S. ZANGWILL (SBN 46203)
SONNENSCHEIN NATH & ROSENTHAL
601 SOUTH FIGUEROA STREET, SUITE 1500
LOS ANGELES, CALIFORNIA 90017
TELEPHONE NO.: (213) 623-9300  FAX NO. (213) 623-9924
ATTORNEY FOR (Name): PLAINTIFFS

FOR COURT USE ONLY

CIVIL BUSINESS OFFICE 10
[illegible] DIVISION
2003 APR 18 P 12:00
[illegible] COURT
[illegible] COUNTY, CA

BY FAX

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:
SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NAME: SPORTS SHINKO v. LA COSTA COMPANY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [ ] Limited  [X] Unlimited | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | 809347  ASSIGNED JUDGE: |

Please complete all five (5) items below.

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   [ ] Auto (22)

   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   [ ] Asbestos (04)
   [ ] Product liability (24)
   [ ] Medical malpractice (45)
   [ ] Other PI/PD/WD (23)

   **Non-PI/PD/WD (Other) Tort**
   [X] Business tort/unfair business practice (07)
   [ ] Civil rights (e.g., discrimination, false arrest) (08)
   [ ] Defamation (e.g., slander, libel) (13)
   [ ] Fraud (16)
   [ ] Intellectual property (19)
   [ ] Professional negligence (e.g., legal malpractice) (25)
   [ ] Other non-PI/PD/WD tort (35)

   **Employment**
   [ ] Wrongful termination (36)
   [ ] Other employment (15)

   **Contract**
   [ ] Breach of contract/warranty (06)
   [ ] Collections (e.g., money owed, open book accounts) (09)
   [ ] Insurance coverage (18)
   [ ] Other contract (37)

   **Real Property**
   [ ] Eminent domain/Inverse condemnation (14)
   [ ] Wrongful eviction (33)
   [ ] Other real property (e.g., quiet title) (26)

   **Unlawful Detainer**
   [ ] Commercial (31)
   [ ] Residential (32)
   [ ] Drugs (38)

   **Judicial Review**
   [ ] Asset forfeiture (05)
   [ ] Petition re: arbitration award (11)

   [ ] Writ of mandate (02)
   [ ] Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
   [ ] Antitrust/Trade regulation (03)
   [ ] Construction defect (10)
   [ ] Claims involving mass tort (40)
   [ ] Securities litigation (28)
   [ ] Toxic tort/Environmental (30)
   [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

   **Enforcement of Judgment**
   [ ] Enforcement of judgment (e.g., sister state, foreign, out-of-county abstracts) (20)

   **Miscellaneous Civil Complaint**
   [ ] RICO (27)
   [ ] Other complaint (not specified above) (42)

   **Miscellaneous Civil Petition**
   [ ] Partnership and corporate governance (21)
   [ ] Other petition (not specified above) (43)

2. This case [ ] is  [X] is not  complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination and related actions pending in one or more courts in other counties, states or countries, or in a federal court
   f. [ ] Substantial post-disposition judicial disposition

3. Type of remedies sought (check all that apply):
   a. [X] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action (specify):

5. This case [ ] is  [X] is not  a class action suit

Date: April 18, 2003

Henry S. Zangwill
(TYPE OR PRINT NAME)

▶ /s/ Martin Foley
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 982.2.)
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
982.2(b)(1) [Rev. January 1, 2000]
SDSC CIV-51 (Rev. 1-00)

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 982.2, 1800-1812
Standards of Judicial Administration § 19
SD-CV-51