IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| SPORTS SHINKO CO., LTD., a Japanese corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>QK HOTEL, LLC, a Hawai`i limited liability company, et al.,<br><br>　　　　Defendants,<br><br>　and<br><br>FRANKLIN K. MUKAI,<br><br>　　　　Third-Party Plaintiff,<br><br>　vs.<br><br>SPORTS SHINKO (USA) CO.; LTD., a Delaware corporation, et al.,<br><br>　　　　Third-Party Defendants. | CIVIL NO. CV 04-00124 ACK/BMK<br><br>CONSOLIDATED CASES<br><br>**DECLARATION OF LUCINDA BROWN; EXHIBIT "B-1"** |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | CIVIL NO. CV 04-00125 ACK/BMK |

636234.3 / 6850-5

```
            Plaintiff,            )
                                  )
    vs.                           )
                                  )
PUKALANI GOLF CLUB, LLC, a        )
Hawai`i limited liability company,)
et al.,                           )
                                  )
            Defendants,           )
                                  )
    and                           )
                                  )
FRANKLIN K. MUKAI,                )
                                  )
            Third-Party Plaintiff,)
                                  )
    vs.                           )
                                  )
SPORTS SHINKO CO., LTD.,          )
a Japan corporation, et al.,      )
                                  )
            Third-Party           )
            Defendants.           )
                                  )
_____)
                                  )
                                  )
SPORTS SHINKO (USA) CO., LTD,)   CIVIL NO. CV 04-00126
a Delaware corporation,           )         ACK/BMK
                                  )
            Plaintiff,            )
                                  )
    vs.                           )
                                  )
KIAHUNA GOLF CLUB, LLC,           )
a Hawai‘i limited liability       )
company, et al.,                  )
                                  )
            Defendants,           )
                                  )
    and                           )
                                  )
FRANKLIN K. MUKAI,                )
                                  )
            Third-Party           )
            Plaintiff,            )
```

636234.3_1 / 6850-5

2

|  |  |
|---|---|
| vs. | ) |
| SPORTS SHINKO CO., LTD., a Japan corporation, et al., | ) ) ) |
| Third-Party Defendants. | ) ) ) ) |
| ――――――――――――――――― | ) ) |
| SPORTS SHINKO CO., LTD., a Japanese corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) |
| OR HOTEL, LLC, a Hawai`i limited liability company, et al., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| FRANKLIN K. MUKAI, | ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, et al., | ) ) ) ) |
| Third-Party Defendants. | ) ) ) |
| ――――――――――――――――― | ) ) |
| SPORTS SHINKO (USA) CO., LTD., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |

CIVIL NO. CV 04-00127
ACK/BMK

CIVIL NO. CV 04-00128
ACK/BMK

636234.3_1 / 6850-5

3

```
                              )
vs.                           )
                              )
MILILANI GOLF CLUB, LLC,      )
a Hawai`i limited liability   )
company, et al.,              )
                              )
        Defendants,           )
                              )
    and                       )
                              )
FRANKLIN K. MUKAI,            )
                              )
        Third-Party Plaintiff,)
                              )
vs.                           )
                              )
SPORTS SHINKO CO., LTD.,      )
a Japan corporation, et al.,  )
                              )
        Third-Party           )
        Defendants.           )
_____)
```

## DECLARATION OF LUCINDA BROWN

I, LUCINDA BROWN, declare as follows:

1. I make this declaration based on personal knowledge and I am competent to testify to the matters set forth herein.

2. From 2002 to present I have been the Vice President of Katron Group, Inc. ("Katron"), a consulting company that assists corporations with managing their assets and business affairs.

3. I assisted Sports Shinko (USA), Co., Ltd. ("SS USA"), a Delaware corporation, for several years, from 1999 through 2001, on behalf of another management company I worked for. In late 2001, I began work at Katron. From the start, I was the primary officer at

Katron who worked for SS USA and its California and Florida subsidiaries. From 2002 through the present, Katron maintained an office in Harper's Ferry, West Virginia. I performed all services on behalf of Katron for SS USA at Katron's West Virginia office.

4. To my knowledge, in May 2002, Trustee Mutsuo Tahara (the "Trustee"), Trustee in Bankruptcy for the involuntary reorganization proceedings for Sports Shinko Co., Ltd. ("SS Japan"), through the Deputy Trustee instructed SS USA, through Takeshi Kinoshita, to enter a consulting agreement with Katron, to work on matters relating to SS USA.

5. From May 2002 through April of 2004, I performed all of my work for SS USA under the primary direction of Steve Iwamura, an accountant who I understood and understand is based in Osaka, Japan. To my knowledge, Mr. Iwamura was receiving direction from the Trustee, Deputy Trustee Keijiro Kimura, and others in Japan. I carried out my work on behalf of SS USA and its California and Florida subsidiaries under the close supervision and direction of Mr. Iwamura. For example, after the bankruptcy began in May 2002, I received communications for SS USA or its California and Florida subsidiaries from third parties, reported to Mr. Iwamura in Osaka, Japan, and received direction from Japan as to what action to take.

6. More generally, under supervision from Japan I handled certain communications and work for SS USA as a

U.S.-based contact for SS USA's accountants, attorneys, insurers, and banks, and helped conduct the affairs of SS USA and its subsidiaries in California and Florida, including work on SS USA's corporate books and accounts. I assisted with winding up the affairs of SS USA and its California and Florida subsidiaries. I performed all of this work from Katron's office in West Virginia.

7. Katron and I were never involved with the affairs of Sports Shinko's Hawai`i subsidiaries or Hawai`i properties, except to the extent that I did work for SS USA and its California and Florida subsidiaries regarding their intercompany loans to Sports Shinko's Hawai`i subsidiaries.

8. Between May, 2002 and August, 2006, Katron billed $104,391.27 for my work (including certain costs billings); in January and February, 2004 alone, Katron billed $4,331.25 for my work related to SS USA. See Ex. "B-1", attached hereto, which are true and correct copies of certain of Katron's invoices, and a spreadsheet containing all Katron's invoices summarized.

9. Katron's average monthly invoice from November, 2003 through May, 2004 was $2,112.50. See Ex. "B-1". Katron periodically performed for SS USA (through me) on average, an hour or two of services monthly through July, 2006.

10. After May, 2002, Katron's invoices were sent to SS USA via Deputy Trustee Keijiro Kimura at his law offices (Kyoei Law

Office) in Osaka, Japan. *Id.* I still have occasional contact with Mr. Iwamura related to SS USA and its California and Florida subsidiaries. Last week, I contacted him regarding a government notice sent to me pertaining to Sports Shinko (Florida) Co., Ltd. Since May, 2004, Katron invoices have been sent to SS USA at an address in Osaka, Japan.

11. All of SS USA's corporate documents in my possession and control are located in Katron's West Virginia office.

12. To the best of my knowledge, SS USA was a holding company and the parent of various subsidiaries that owned properties throughout the United States. To my knowledge, SS USA itself never engaged in any business activities in the United States.

13. Based on my review of the SS USA consolidated financials in the course of my duties and to the best of my recollection, the largest single asset owned by any subsidiary of SS USA was the La Costa Resort & Spa in California, which was sold on November 15, 2001, and the second largest asset was the Grenelefe Resort in Florida.

14. To the best of my knowledge, as of February 20, 2004, SS USA was essentially defunct. At that time, it owned no properties and engaged in no activities other than activities incidental to winding down its operations and pursuing litigation.

15. The documents attached as Exhibit "B-1" to this Declaration were made and kept in the ordinary course of my activities for SS USA at or near the time of the activities reflected in the invoices. They accurately reflect the nature and extent of the work I performed for SS USA (and its subsidiaries).

*I swear that the foregoing is true under penalties of perjury.*

DATED: Harpers Ferry, West Virginia, January 25, 2007.

                                        /s/ Lucinda Brown
                                     LUCINDA BROWN