IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SPORTS SHINKO CO., LTD., <br>　　　Plaintiff, <br>　vs. <br>QK HOTEL, LLC, et al., <br>　　　Defendants, <br>　and <br>FRANKLIN K. MUKAI, et al., <br>　　　Third-Party Plaintiffs, <br>　vs. <br>SPORTS SHINKO (USA) CO., LTD., et al., <br>　　　Third-Party Defendants, <br>　and <br>SPORTS SHINKO (HAWAII) CO., LTD., et al., <br>　　　Third-Party Defendants/ <br>　　　Counterclaimants, <br>　vs. <br>QK HOTEL, LLC, et al., <br>　　　Third-Party Counterclaim <br>　　　Defendants. <br>AND CONSOLIDATED CASES | CV 04-00124 ACK-BMK <br>CV 04-00125 ACK-BMK <br>CV 04-00126 ACK-BMK <br>CV 04-00127 ACK-BMK <br>CV 04-00128 ACK-BMK <br><br>CONSOLIDATED CASES <br><br><br>MEMORANDUM IN <br>SUPPORT OF MOTION |

MEMORANDUM IN SUPPORT OF MOTION

I.    BACKGROUND

This is the first of a series of discovery motions relating to these consolidated cases that were discussed at the Discovery Conference on March 16, 2007.[1] Because of the centrality of this issue to the cases and the other discovery motions, this Motion is filed first.

By this Motion, the KG Parties[2] seek an order compelling the plaintiffs to specifically identify and provide evidence to support the alleged debts that form the basis for the plaintiffs' standing to sue under the Hawaii Uniform Fraudulent Transfer Act, Hawaii Revised Statutes ("HRS") Ch. 651C ("HUFTA"). If SS[3]

---

[1] The parties have met and conferred several times on the subject of this motion both before and after March 16, 2007, but no satisfactory resolution has been reached. The information sought by this motion will allow the plaintiffs' depositions to proceed in an orderly and expedient fashion.

The parties are continuing to work to resolve the issues raised by this motion, but because so much time has passed and the trial date is approaching, KG has filed this motion so that the discussion between counsel, which has been on-going since early 2005, ceases to be endless.

[2] The KG Parties are KG Holdings, LLC, QK Hotel, LLC, OR Hotel, LLC, Pukalani Golf Club, LLC, KG Maui Development, LLC, Mililani Golf Club, LLC, Kiahuna Golf Club, LLC and KG Kauai Development, LLC.

[3] For purposes of this motion, "SS" or "Plaintiffs" means Sports Shinko (USA) Co., Ltd. ("SS-USA"), the plaintiff in D. Hawaii CV Nos. 04-00125 ACK-BMK, 04-00126 ACK-BMK and 04-00128 ACK-BMK, and Sports Shinko Co., Ltd. ("SS-Japan"), the plaintiff in D. Hawaii CV Nos. 04-0024 ACK-BMK and 04-0027 ACK-BMK.

cannot prove their alleged creditor status by clear and convincing evidence,[4] they are not entitled to the extraordinary remedies provided by HUFTA.

From the voluminous documents the KG Parties have reviewed to date, it appears there never was any legitimate intercompany debt. What the evidence shows is massive paper shuffling between SS-affiliated companies concerning money movement necessary as to keep the companies afloat. What SS alleges is debt is more likely the plaintiff/parent companies' equity investment in their subsidiaries as a matter of fact or law or both.

The KG Parties and more recently, Defendant Franklin Mukai, have been asking SS to provide proof of the plaintiffs' creditor status, formally and informally, since the case became active at the beginning of 2005. To date, the plaintiffs have not provided a meaningful response, and have never identified which specific intercompany loans are referenced in the complaints (described below), much less provide specific documentation to prove the debt and the unpaid balance owing. Specifically, the KG Parties seek an order compelling plaintiffs to provide:

  1. Identification of each intercompany debt referenced in the table on page 4 of this memorandum, stating the date the debt was formed, the original principal balance, and rate(s) of interest applied to the debt.

---

[4]   Kekona v. Abastillas, 2006 WL 3020312 (Hawaii, September 26, 2006) (elements of a HUFTA claim must be proven by clear and convincing evidence).

2

2. Identification of the present owner of the debt and all others who have owned the debt since January 25, 2002.[5]

3. If ownership of the debt has changed since January 25, 2002, documentation related to the changed ownership, including documentation of the relinquishment of rights of the prior owner(s).

4. The balance due on the debt as of the date of closing of the particular SS-KG transfer sued upon.

5. The balance due on the debt as of the calendar quarter ending prior to the date of SS's response to the order granting this Motion.

6. A ledger showing all debits and credits to the debt from the date of formation of the debt, including without limitation, payments, charges, offsets, write-offs and interest assessed, from the date of formation of the debt to the end of the calendar quarter ending prior to SS's response to the order granting this Motion.

7. The production of all documents used to respond to the foregoing (and only those documents), segregated for each debt. If an original promissory note exists to support a debt, it will be specifically identified.

8. As to each debt identified in response to item 1, a statement whether it is based upon a promissory note listed on the exhibit to the Loan Purchase Agreement ("LPA") or Supplemental Loan Purchase Agreement ("SLPA"), and if so, which LPA/SLPA exhibit entry correlates with the debt.

---

[5] January 25, 2002 is the date most of the SS Hawaii assets were transferred to the KG subsidiaries.

3

II. **PLAINTIFFS ALLEGE -- BUT HAVE NOT ADEQUATELY PROVIDED PROOF -- THAT THEY ARE CREDITORS**

In each of the five consolidated cases, one of the plaintiffs has specifically alleged it is the creditor of a specific one of its subsidiaries. The allegations are clear, but the evidence to support the intercompany debts is not.

The plaintiffs' specific allegations about the inter-company debts that form the basis for its status as HUFTA plaintiffs are as follows:

| Case No. | Alleged Creditor | Alleged Debtor | Source |
| --- | --- | --- | --- |
| 04-00124 | SS-Japan | Sports Shinko (Waikiki) Corp. | TAC[6] ¶¶ 1, 7 |
| 04-00125 | SS-USA | Sports Shinko (Pukalani) Co., Ltd. | TAC ¶¶ 1, 7 |
| 04-00126 | SS-USA | Sports Shinko (Kauai) Co., Ltd. | SAC[7] ¶ 1, 14 |
| 04-00127 | SS-Japan | Sports Shinko (Waikiki) Corp. | TAC ¶¶ 1, 7 |
| 04-00128 | SS-USA | Sports Shinko (Mililani) Co., Ltd. | TAC ¶¶ 1, 7 |

The pleadings provide no particulars about the amounts due on these debts or even the date the alleged debts were formed.

---

[6]   "TAC" refers to the Third Amended Complaints filed in CV Nos. 04-00124 ACK-BMK, 04-00125 ACK-BMK, 04-00127 ACK-BMK and 04-00128 ACK-BMK on January 19, 2007

[7]   "SAC" refers to the Second Amended Complaint filed in CV 04-00126 ACK-BMK on July 12, 2005. Excerpts of the Second and Third Amended Complaints referred to in the table above are attached as Exhibit 1.

4

Evidence of 1) the validity of the alleged debts and 2) the amount due at the time of transfer of the SS assets to the various KG Parties is at the very heart of these cases. Without clear and convincing evidence that the plaintiffs are creditors as alleged, their claims under HUFTA – which are the predominant claims in the litigation – fail. In addition, the amount of the debt at the time of the alleged fraudulent transfer, which must also be proven by clear and convincing evidence, is critical because it caps the amount the plaintiff can claim in a given case.

III.    THE POST-BANKRUPTCY "MIGRATION" OF THE ALLEGED INTERCOMPANY DEBT

Following the April 2004 termination of SS-Japan's Osaka bankruptcy and the acquisition of the stock of SS-Japan by Goldman Sachs' wholly owned subsidiary, South Wind Realty Finance Cayman Company ("South Wind"), there have been two transactions that are particularly important to these cases. The transactions are important because they each affect who owns the alleged debts, and therefore, raise important questions about whether all necessary parties are participating in the lawsuits.

First, it appears that the SS Hawaii subsidiaries' intercompany debts allegedly owed to SS-Japan or SS-USA were sold by SS-Japan to South Wind.

5

This is evidenced by a Loan Purchase Agreement ("LPA") and Supplement to Loan Purchase Agreement ("SLPA"), both dated December 30, 2004.[8]

Second, in a series of complex transactions, SS-Japan was sold to Accordia Golf, Ltd. ("Accordia"). Accordia's stock is now publicly traded on the Tokyo Stock Exchange, and SS-Japan is Accordia's wholly owned subsidiary. SS-Japan is therefore no longer a wholly owned subsidiary of Goldman Sachs. In contrast, pursuant to a Share Transfer Agreement dated September 30, 2004, it appears that SS-USA is a wholly owned subsidiary of South Wind (and therefore, of Goldman Sachs).

From discussions with SS's counsel and KG's own analysis, it appears that *all* the alleged intercompany debt between the plaintiffs and their subsidiaries that form the basis for the plaintiffs' HUFTA standing[9] may have been purchased by South Wind and are listed in the exhibit to the LPA/SLPA. However, SS declined to confirm this in writing and there is considerable uncertainty about this point.

The identification of the owner of the debt is critically important. If there are other possible HUFTA claimants, or if the plaintiffs do not own the claims sued upon, KG could be subject to a multiplicity of suits and these claims (or some of

---

[8] The LPA and SLPA are attached as Exhibits 2A and 2B respectively.
[9] That is, the intercompany loans summarized in the table on page 4 hereof.

6

them) may be subject to dismissal.  This must therefore be resolved as the deadline to add new parties and claims, while still indeterminate, is likely fast approaching.

Indeed, primarily because the parties could not agree on when this deadline should be set, there is no Rule 16 Scheduling Order in place at this time.  The only fixed future date in the record is the January 29, 2008 trial date.  This needs to be resolved soon, and this too (unfortunately) requires judicial resolution.

IV.   KG (AND MUKAI) HAVE PROMULGATED SPECIFIC DISCOVERY REQUESTS TO PLAINTIFFS REGARDING PROOF OF ITS STATUS AS A CREDITOR

These five lawsuits were filed on February 20, 2004.  During 2004, an effort was made to settle the cases.  The settlement effort ended in failure on December 30, 2004.

On January 3, 2005, the KG Parties propounded written discovery on the SS Parties directed to a number of issues, including proof of intercompany debt.  In their May 13, 2005 response, SS provided no meaningful detail in response to KG's request to provide facts, witnesses and documents to support the allegation that SS-Japan was a creditor of SS-Waikiki.[10]

---

[10]   Excerpts from SS's response is attached as Exhibit 3.  See also Exhibit 4, which is SS's response to KG's request for documentation about the apparent sale of the alleged loans to South Wind.

Just last week, SS once again skirted the issues raised by this motion.  On October 19, 2006, defendant Franklin Mukai asked SS to identify the amount of

7

At a status conference on October 5, 2005 (and many times since), the Court has urged the parties to share key information so the strengths and weaknesses of the claims and defenses could be understood. The KG parties have endeavored to get the information sought by this Motion on many occasions with no meaningful results. Exhibits 5 - 8 hereto show the subject of this Motion has been the topic of multiple meet and confer discussions from October 14, 2005 until the most recent discussion with SS's counsel on March 30, 2007, as well as numerous status and discovery conferences with the Court.

We also note that Mr. Alston took the position, both before the Court in October 2005 and when the parties met and conferred on November 15, 2005, that providing the detailed information about these debts as requested by KG was reasonable. See Exhibit 7.

The important thing to remember is that SS has never said – at least prior to its March 30, 2007 response to Mukai's interrogatories – that they will not produce

---

each of the debts, documentation supporting each debt and changes to the amount due. In their responses served on March 30, 2007, SS identified reams of documents, which included virtually the identical documents to prove each of the (ostensibly) different debts.

SS has once again made it impossible to assess plaintiffs' alleged status as creditors. To the contrary, in response to Mukai's interrogatories, plaintiffs have taken the position that they have "no obligation to provide, and will not provide, an exhaustive list" of documents proving the debt. Excerpts from SS's responses to Mukai's interrogatories are attached as Exhibits 5A- 5E.

8

the requested information; they simply have never done so. Indeed, on March 23, 2007, in a misguided effort to resolve this issue, SS produced a 6″ stack of documents which it called "promissory notes and related documents." However, many of the notes produced are not signed, many of them are understood to have been paid, cancelled or novated, and nearly all of them are not referenced in the LPA/SLPA, and therefore are not likely to be the notes that form the basis for SS's alleged status as a creditor of its subsidiaries.

Moreover, SS has (again) provided no detail as to the amount due on the alleged debts as of the date of closing or otherwise.

The closest SS has come to providing solid answers about the alleged intercompany debt is:

o   when asked whether SS would concede that they do not have original signed promissory notes (or signed copies) to support the alleged debts, counsel for SS responded:

   **"I do not believe South Wind has the originals, but we are not conceding anything."** Exhibit 9.

o   In November 2005 and earlier, KG asked SS: "which notes in the Loan Purchase Agreement are the basis for the creditor status sued upon?" Finally, in late February 2007, SS responded:

   **"Any or all could form the basis for these claims."** Exhibits 10. See also Exhibits 6 and 7.

9

This response is ludicrous, as the Loan Purchase Agreement addresses debts owing by SS's Florida and Europe subsidiaries that clearly have nothing to do with these cases.  See Exhibit 2.

Identification and quantification of the alleged intercompany debt that forms the basis for the plaintiffs' HUFTA standing is a search for a needle in a haystack. The "dump truck" discovery that SS has provided shows that money movements between the various Sports Shinko entities at all levels were frequent and substantial.  Virtually every Sports Shinko company was sending money to virtually every other Sports Shinko company.  Through this morass of money flows, plaintiffs allege that genuine debts existed between them and certain specified subsidiaries (as noted in the table on page 4).

KG reminds the Court that it is a stranger to the money movements within the SS companies.  In contrast, plaintiffs' attorneys also represent the Sports Shinko Hawaii subsidiaries, including each of the subsidiaries that allegedly owed the debts to plaintiffs.  As they represent both the alleged creditors and alleged debtors, the plaintiffs' counsel are ideally situated to identify and quantify the plaintiffs' alleged creditor status consistent with KG's persistent requests.

In summary, it is time for SS to provide clear and convincing evidence to support their claimed status as creditors.  The evasion and obfuscation has gone on far too long.

V.  LAW

An evasive or incomplete answer to a discovery request is treated as a failure to answer or disclose, and is a proper basis for a Rule 37(a) motion to compel. F.R.Civ.P. 37(a)(3); Int'l Brotherhood of Elec. Workers v. Hope Elec. Corp., 380 F.3d 1084, 1105 (8th Cir. 2004).

VI. CONCLUSION

Plaintiffs have the burden of proving their alleged creditor status. In their complaints, they have alleged that specific, discernable, separate debts exist to support their separate lawsuits. Plaintiffs must be compelled to show the evidence they have to support this critical fact without further delay.

Plaintiffs have been asked to identify the information requested by this motion repeatedly, both formally and informally, and they have failed to do so. This Motion should be granted.

DATED: Honolulu, Hawaii, April 5, 2007.

/s/ Robert A. Marks
WARREN PRICE III
ROBERT A. MARKS
SIMON KLEVANSKY
ALIKA L. PIPER
CARISA LIMA KA'ALA HEE

Attorneys for Defendants, Counterclaimants and Third-Party Plaintiffs KG Holdings, LLC, QK Hotel, LLC, OR Hotel, LLC, Pukalani Golf Club, LLC, KG Maui Development, LLC, Mililani Golf Club, LLC, Kiahuna Golf Club, LLC and KG Kauai Development, LLC

11