**PRICE**
**OKAMOTO**
**HIMENO**
**& LUM**

Attorneys at Law
A Law Corporation

Ocean View Center
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549

Warren Price III
Kenneth T. Okamoto
Sharon R. Himeno
Bettina W. J. Lum
Terence S. Yamamoto
Robert M. Kohn

Counsel

Robert A. Marks
Rick J. Eichor
Susan C. Wilson
Norma D. Titcomb

November 16, 2005

<u>VIA HAND DELIVERY</u>
The Honorable Barry M. Kurren
United States Magistrate Judge
300 Ala Moana Boulevard
Suite C-229
Honolulu, Hawaii 96850

Re:  Sports Shinko Co. Ltd. v. QK Hotel, LLC,
<u>D. Hawaii Cv. 04-00124 ACK-BMK and consolidated cases</u>

Dear Judge Kurren:

Following the October 5, 2005 status conference in these cases, on October 14, 2005, I sent counsel for Sports Shinko an eight page, single-spaced agenda of topics that we need to resolve in order to evaluate the plaintiffs' claims.

Counsel was able to meet to discuss the October 14 agenda (and other topics developed subsequently) only yesterday. At yesterday's meeting, Mr. Alston:

- acknowledged that the KG defendants are entitled to all the information we have requested;

- informed counsel that his client has been slow to respond to his requests to provide the requested information, and

- informed counsel us that Glenn Melchinger will be going to Japan during Thanksgiving week to get answers to our questions.

Paul asked that we agree to continue the status conference scheduled for November 22 until after Glenn returns and the information is provided to the defendants. We have no objection to continuing the status conference as Paul has requested.

Paul also noted that he has no objection to extending the time for the defendants to file answers, counterclaims and third party complaints until two weeks after Glenn shares the fruits of his Japan trip with defense counsel. Since many of the pending information

**EXHIBIT 7**

The Honorable Barry M. Kurren
November 16, 2005
Page 2

requests relate to possible additional parties, a further continuance of that deadline, currently set for November 30, will be appropriate.

    For your information, my notes of the November 15 meeting of counsel and cover letter are enclosed so you can get a sense of how things are proceeding.

    Very truly yours,

    PRICE OKAMOTO HIMENO & LUM

    *[signature]*

    Robert A. Marks

Enclosure

c:    Client
    Paul Alston, Esq.\Glenn Melchinger, Esq.
    William Bordner, Esq.\John Reyes-Burke, Esq.

**PRICE OKAMOTO HIMENO & LUM**

Attorneys at Law
A Law Corporation

Ocean View Center
707 Richards Street, Suite 728
Honolulu, Hawaii 96813
Telephone: (808) 538-1113
Fax: (808) 533-0549

Warren Price III
Kenneth T. Okamoto
Sharon R. Himeno
Bettina W. J. Lum
Terence S. Yamamoto
Robert M. Kohn

Counsel

Robert A. Marks
Rick J. Eichor
Susan C. Wilson
Norma D. Titcomb

November 15, 2005

VIA MAIL AND E-MAIL
Paul Alston, Esq.
Glenn T. Melchinger, Esq.
Alston Hunt Floyd & Ing
1001 Bishop Street
American Savings Tower, Suite 1800
Honolulu, Hawaii 96813

VIA MAIL AND E-MAIL
William Bordner, Esq.
John Reyes-Burke, Esq.
Burke McPheeters Bordner & Estes
737 Bishop Street
Mauka Tower, Suite 3100
Honolulu, Hawaii 96813

Re: Sports Shinko Co. Ltd. v. QK Hotel, LLC,
D. Hawaii Cv. 04-00124 ACK-BMK and consolidated cases

Gentlemen:

This confirms our discussion at the meet and confer session this afternoon at 2:30 p.m.

Paul mentioned that Glenn will be going to Japan week after next to get the information we have requested over the last few months. Paul noted his client has been slow to respond to requests for information. Paul acknowledged that we are entitled to all the items we've requested.

Paul noted that he has no objection to extending the time for the defendants to file answers, counterclaims and third party complaints until two weeks after Glenn shares the fruits of his Japan trip with defense counsel.

Glenn noted that all of the SS documents from Japan are now available for inspection and copying (total of ~ 170 boxes). There are about two boxes of documents subpoenaed from Lucinda Brown, 15 boxes subpoenaed from Tom Hayes, and about 22 boxes from the California attorneys for SS, two of which appear to be privileged. No firm timetable was given for when these documents will be available.

Paul noted that the firm is looking to hire a paralegal to work full time on the case.

I reported to Glenn and Paul on the volume of SS documents that are in KG's possession (requested in Glenn's October 30 e-mail). These are basically operating documents that the SS Hawaii companies left behind when the companies were

Messrs. Alston, Melchinger, Bordner
    and Reyes-Burke
November 15, 2005
Page 2

purchased by KG entities. There is a room full of documents for Ocean Resort, a room full of documents for Queen Kapiolani and about 160 boxes at Pukalani golf course. Documents have not yet been found for Mililani, and may have been discarded. Please let me know if/when you'd like to inspect these documents.

    My notes of our discussion on specific topics are found on the enclosure. The items for which there is no notes column on the enclosure were not specifically discussed and are reserved for further discussion after Glenn returns from Japan. We understand Glenn will pursue these topics in Japan even though they were not specifically discussed today.

    We concluded the meeting discussing what the topics should be for discussion at the November 22 status conference. Paul suggested we continue it until after Glenn's return.

    Let me know if you have any comments or clarifications on this letter or its enclosure.

                        Very truly yours,

                        PRICE OKAMOTO HIMENO & LUM

                        Robert A. Marks

Enclosure

c:    Client

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 1

| Xref | Topic | Notes |
|---|---|---|
| | SSJ legal status | Glenn will also inquire whether Sports Shinko Co., Ltd. is still a corporation (kabusihiki kaisha), or is now a limited liability corporation as stated in the loan purchase agreement. |
| | | SSJ and SS-USA are not suing on any assigned claims. Paul and Glenn confirmed the claims being sued upon are purely intercompany debt, and are not assigned claims from a Japan bank, RCC, the trustee or any other person or entity. |
| | Which notes in Loan Purchase Agreement appendix are the basis for the creditor status sued upon? | Glenn will investigate in Japan which of the notes shown in the exhibit to the LPA Appendix are being sued upon in which cases. |
| 11/12 email | Will you direct us to SSJ FS in boxes 51-110? | Glenn will see if all SS-J audited financial statements can be obtained from the auditors in Japan. Not clear if SS will identify where the SSJ audited financial statements can be found within the SS document production |
| 41 11/9 email | Re: Grant Thornton documents<br>• When will docs reclassified as non-priv'd be produced?<br>• When will priv log be produced? | Glenn expects to be finished reviewing the GT documents this week. He expects his staff will be able to produce the GT documents previously withheld as privileged by the end of the month.<br>The revised GT privilege log may also be completed by then, but it's possible that may take a while longer. |
| 43 | • Is the GT study of inter-company loans and interest schedule (referenced on GT013032) reclassified as nonprivileged? | Glenn will produce the GT study of intercompany loans and interest schedule. He's not sure if it's among the GT documents, but it will be produced. |

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 7

5. Has SW acquired any loans owned by SS-USA similar to SW's acquisition of loans owned by SS-J under the 12/30/2004 Loan Purchase Agreement (256 0239 et seq.) (the "LPA") and related Supplement to Loan Purchase Agreement (256 0288 et seq.) (the "SLPA")?

6. Identify the lawsuits referred to in the first "whereas" clause of the SLPA, which refers to "claims asserted by [SS-J] in the lawsuits now pending in the State of Hawai'i USA".

7. Annex A to the LPA identifies 27 loans that SW acquired from SS-J effective 12/30/2004. Are the balances listed as "Outstanding Principal Amount" ("OPA") and "Unpaid Interests" ("UI") those amounts as of 12/30/2004?

8. What was the OPA and UI for each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

9. Did SS-J own each of the 27 loans as of (i) 01/25/2002; and, (ii) 04/15/2002?

10. If SS-J did not own each of the loans on (i) 01/25/2002; and, (ii) 04/15/2002, produce the documentation that evidences SS-J's acquisition of each such loan, including from whom the loan was acquired, the consideration paid to acquire the loan and the date and terms of the transaction.

11. Annex A to the LPA and SLPA lists 8 loans owned by SS-H in which SS-H is shown as the borrower. Those 8 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 04/23/1986 | $6,167,500.00 |
| 04/23/1986 | $10,543,883.97 |
| 09/17/1986 | $7,227,144.32 |
| 10/02/1987 | $7,702,572.88 |
| 10/15/1987 | $10,206,307.77 |
| 10/15/1987 | $11,322,542.67 |
| 10/20/1987 | $0.00 |

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 8

| 10/30/1987 | $4,687,874.73 |

For each of these 8 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-H's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-H's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-H, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-H that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

12. Annex A to the LPA and SLPA lists 5 loans owned by SS-J in which Sports Shinko (Florida) Co., Ltd. (SS-F) is shown as the borrower. Those 5 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 09/21/1987 | $10,249,172.04 |
| 03/30/1990 | $3,000,000.00 |
| 04/13/1990 | $4,940,000.00 |
| 09/21/1992 | $3,000,000.00 |
| Not shown | $0.00 |

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 9

13. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which SS-USA is shown as the borrower. Those 3 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $6,560,000.00 |
| 02/15/1990 | $1,500,000.00 |
| 08/20/1991 | $251,500.00 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-USA's borrowing from SS-J, or other entity if SS-J is not the original lender.

For each of these 5 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences SS-F's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-F's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-F, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-F that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 10

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves SS-USA's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

d. The documentation of the gross amounts paid by SS-USA, or any of its affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to SS-USA that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

14. Annex A to the LPA and SLPA lists 2 loans owned by SS-J in which Ocean Resort Hotel Corporation (ORHC) is shown as the borrower. Those 2 loans are identified as follows:

| Date of Borrowing | Outstanding Principal Amount |
|---|---|
| 02/23/1989 | $2,330,000.00 |
| 01/31/1990 | $410,000.00 |

For each of these 2 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences ORHC's borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

c. The documentation that proves ORHC's receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 11

d. The documentation of the gross amounts paid by ORHC, or any of its affiliates, or other entity if SS-J is not the original lender, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

e. The documentation of any amounts of each such loan to ORHC that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

15. Annex A to the LPA and SLPA lists 3 loans owned by SS-J in which various SS-H subsidiaries are listed as the borrowers. Those 3 loans are identified as follows:

| Borrower | Date of Borrowing | Outstanding Principal Amount |
|---|---|---|
| Sports Shinko (Kauai) Co., Ltd. (SS-K) | 10/16/1990 | $1,600,000.00 |
| Sports Shinko (Mililani) Co., Ltd. (SS-M) | 08/31/1990 | $0.00 |
| Sports Shinko (Waikiki) Corp. (SS-W) | 06/05/1990 | ¥1,825,972,343 |

For each of these 3 loans, produce:

a. The promissory note, or equivalent documentation of indebtedness, that evidences each entities borrowing from SS-J, or other entity if SS-J is not the original lender.

b. The documentation of the gross amounts loaned by SS-J, or other entity if SS-J is not the original lender, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 12

    c.    The documentation that proves each entities receipt of the gross amounts loaned from SS-J, or other entity if SS-J is not the original lender.

    d.    The documentation of the gross amounts paid by each entity, or any of their affiliates, to SS-J, or any of its affiliates, or other entity if SS-J is not the original lender, in payment on the debt.

    e.    The documentation of any amounts of each such loan to SS-K, SS-M and SS-W that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

16. Has SW acquired any loans owned by SS Hawaii or any of SS Hawaii's wholly-owned subsidiaries to SS-J, SS-USA or any of the subsidiaries or affiliates of SS-J or SS-USA?

17. Were credits given or offsets provided to SS Hawaii or any of its subsidiaries for any or all of the unpaid portion of their loans to a) SS-USA, b) SS-J, and/or c) SS operating companies?

18. In order to understand and evaluate SS-J's actions reflected by the financial statements for SS-USA and its subsidiaries, we need the complete general ledger with detail activity in support of the "12/31/2004 Balance Sheet", "2004 Income Statement" and "2004 Trial Balance", documents 256 0253 to 256 0282, inclusive. These data are needed for the entire time that the books and records of the subject entities were maintained by SS-J management or its nominees. We would also like you to identify the person(s) who maintain these documents and the underlying general ledgers.

19. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Mililani) Co., Ltd. ("SS-M") is alleged to have owed SS-USA.

20. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Pukalani) Co., Ltd. ("SS-P") is alleged to have owed SS-USA.

21. Identify the amount of the debt outstanding as of 1/25/2002 that Sports Shinko (Kauai) Co., Ltd. ("SS-K") is alleged to have owed SS-USA.

22. For each of the debts identified in the three preceding requests, produce:

    a.    The promissory note that evidences the debt

MEET AND CONFER MINUTES
November 15, 2005; 2:30 pm
Page 13

    b. The documentation of the gross amounts allegedly loaned by SS-USA, including the date(s) on which loan(s) were made and, if other than cash, the documentation that sets forth the method used to determine the loan value.

    c. The documentation that proves receipt of the gross amounts allegedly loaned by SS-USA to SS-M, SS-P and SS-K, respectively.

    d. The documentation of the gross amounts paid by SS-M, SS-P and SS-K, respectively, or any of their affiliates, to SS-USA in payment on the alleged debt.

    e. The documentation of the amounts of alleged SS-USA loans to SS-M, SS-P and SS-K, respectively, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

23. Identify the amount of the debt outstanding as of 4/15/2002 that Sports Shinko (Waikiki) Corporation ("SS-W") is alleged to have owed SS-J which is related to the Ocean Resort Hotel Waikiki.

24. Identify the amount of the debt outstanding as of 4/15/2002 that SS-W is alleged to have owed SS-J which is related to the Queen Kapiolani Hotel.

25. For each of the debts identified in the two preceding questions, produce:

    a. The promissory note that evidences the debt

    b. The documentation of the gross amounts allegedly loaned by SS-J, including the date(s) on which loan(s) were made and, if other than cash, the method used to determine the loan value.

    c. The documentation that proves receipt of the gross amounts allegedly loaned by SS-J to SS-W for each of the two properties.

    d. The documentation of the gross amounts paid by SS-W or any of SS-W's affiliates to SS-J in payment on the alleged debt.

    e. The documentation of the amounts of alleged SS-J loans to SS-W, that were (i) adjusted; (ii) offset; (iii) forgiven; and/or (iv) converted to equity.

26. Produce copies of 2004 state and federal tax returns for SS-USA & subsidiaries, and all 2004 tax returns filed by or on behalf of SS-J.